**Harold SULLIVAN, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 12, 1972.

Larry Allen, Allen & Bledsoe, London, for appellant.

Ed W. Hancock, Atty. Gen., Kenneth A. Howe, Jr., Asst. Atty. Gen., Frankfort, for appellee.

NEIKIRK, Judge.

This is a belated appeal from a judgment of the Laurel Circuit Court wherein Harold Sullivan was found guilty of breaking and entering a storehouse. KRS 433.180. His punishment was fixed by the jury at five years in the penitentiary. We affirm.

Leonard Allen owned a farm in Laurel County near Lily, approximately nine miles from where he resided. The only improvements on the farm were some outbuildings, a garage, and a barn.

Allen's grandson, Allen Sharf, stopped at the farm on the night of July 26, 1969. In order to reach the area of the outbuildings, Sharf had to turn off the main highway onto a private road. The private

road was approximately a quarter of a mile in length and ended at a gate near the outbuildings. Upon arrival, Sharf noticed an unoccupied 1960 Ford parked outside the locked gate. Upon investigation, he observed that the gas cap had been opened and that, apparently, gasoline had been poured into the Ford's tank as there was a gas spill down the side of the car. Sharf returned to his car, backed down the private road and parked a short distance from the main highway in order to observe any further developments. Shortly thereafter, he saw the Ford being backed down the road toward him. Sharf blocked the road. Appellant Sullivan, the driver, and three other men were in the car. In order to ascertain if he knew the driver and the other occupants, Sharf engaged the appellant in a brief conversation and asked him if he knew the whereabouts of a fictitious person. After this brief encounter, Sharf returned to his car, and appellant drove the Ford back up the private road toward the Allen farm. Sharf went to a nearby gasoline station and telephoned his grandfather Allen to tell him what he had observed. Shortly thereafter, Allen, accompanied by a son-in-law, arrived at the station in a pickup truck. Sharf jumped into the back of the truck. The parties then drove up the private road to Allen's farm and stopped directly behind the Ford, which was parked at the end of the road outside the gate. Sharf, armed with a shotgun, ordered appellant and the other occupants of the Ford to get out of the car. Allen searched the men for weapons but found none. However, he found a pistol in the glove compartment of the car. While the men were being guarded by Sharf and Allen's son-in-law, Allen returned to the gasoline station and called the state police. Shortly thereafter, troopers Walton and Hendrickson arrived. Allen told them that he thought his outbuildings had been broken into by the suspects. Walton directed Sharf to put down his gun. Walton frisked the four suspects and then directed them to get into the patrol car and to remain there under the supervi-

sion of Hendrickson. Allen suggested that his outbuildings be inspected to see if there was any evidence of breaking and entering. Upon investigation, Allen, Sharf, and Walton discovered that the locks on the garage and barn had been broken. Allen pointed out that various items of personal property were missing from the garage and barn. Allen then suggested that they return to the Ford and search it for the missing items. Walton agreed. However, they found nothing in the passenger compartment of the car and could not get into the trunk. Trooper Walton went to the patrol car and told appellant and the other suspects that they were under arrest. He requested the key to the trunk of the car. Appellant told Walton that he had borrowed the car and did not have the key. Walton and Allen went to the back of the car where, with the aid of a flashlight, they observed a wire protruding from the trunk. Allen pulled on the wire with a pair of pliers and the trunk lid opened. Inside were the missing items. Walton then returned to the patrol car and informed appellant and his companions that they were charged with breaking and entering a storehouse.

Appellant contends that the citizen's arrest by Allen and Sharf was illegal, asserting that at the time of the arrest there was no probable cause to believe that the appellant had committed a felony and that the subsequent arrest by Walton was rendered invalid. Walton testified that he took full charge of the situation when he arrived at the scene: he directed that the suspects be released to him; he initiated an investigation; and he found that Allen's barn and garage had in truth been forcibly entered and personal property belonging to Allen had been taken.

■ We find that under the circumstances the peace officers had the legal right when they arrived on the scene to restrain the appellant and the other suspects. This was not unreasonable as peace officers are charged with a duty to investigate crime. The initial restraint was of short

duration and the action of the officers was as much for the protection of appellant and those with him as it was to placate the feelings of Allen and Sharf. Had the further immediate investigation by Walton revealed that no felony had in fact been committed, then appellant and his companions would doubtless have been released. Under the probabilities confronting trooper Walton at the time he restrained appellant and his companions and placed them in the custody of another peace officer, to hold that such action was illegal would be to strip all law enforcement officers of their authority to properly investigate the probable commission of a crime and make an arrest incident thereto. When Walton later formally placed appellant and the other suspects under arrest, he had more than probable cause to believe a felony had been committed as he had ascertained that a felony had in fact been committed and had reasonable grounds to believe that they were involved. The arrest of appellant by trooper Walton without a warrant was valid. KRS 431.005. Whether or not the citizen's arrest was lawful had become academic at the time of the arrest by the peace officer, and we need not pass judgment on the lawfulness vel non of that arrest.

■ Appellant contends that the trial court erred in failing to sustain motions at the trial to suppress the introduction of the evidence seized in the search of the motor vehicle operated by him. The search of the trunk of the automobile was made without a search warrant. We are called upon to determine if this warrantless search was unreasonable under the Fourth Amendment to the Constitution of the United States and Section 10 of the Constitution of the Commonwealth of Kentucky.

Appellant and his companions were arrested by trooper Walton immediately after the inspection of the outbuildings and just prior to the search of the car's trunk. There were reasonable grounds to believe that the trunk of the car held contraband taken during the commission of the felony. Only unreasonable searches and seizures are forbidden by constitutional prohibition. We are fully cognizant of the many pronouncements made by federal and state courts concerning warrantless searches and seizures. Gleaning the principles and precedents set out in the many cases on this subject, we conclude that the courts have not evolved definitive controlling guidelines covering every situation involving a search, as each case presents particular facts and circumstances peculiar to the events resulting in a search. Due to the determining facts and circumstances involved in each search and seizure case decided by our courts, it is difficult to apply any of them to a particular case except as they apply in broad and general terms.

Distinction has been made between offices, houses, and motor vehicles in so far as the law of search and seizure is concerned. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

In Carroll, the court held that the police could make a warrantless search of a vehicle being operated on a highway upon probable cause that it contained contraband "because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the court said:

"In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. Carroll, supra, holds a search warrant unnecessary

where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible.

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

"On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. * * * "

In Chambers, the warrantless search of the automobile was not made at the time of the arrest but after the vehicle had been taken to the "station house." The court held the search reasonable and valid. We adopted and approved the Chambers reasoning in Ballard v. Commonwealth, Ky., 462 S.W.2d 905 (1971).

It appears that the best the courts can do in the field of searches and seizures is to scrutinize each search and apply the test of "reasonableness" and "probable cause" as understood by prudent men. Under all the circumstances and facts present in the instant case, we hold the search of the automobile under the control of the appellant was reasonable. The trial court did not err in admitting into evidence the fruits of the search.

The judgment is affirmed.

All concur.