William COOPER, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Court of Appeals of Kentucky.

Jan. 19, 1979.*

---

* The decision of the panel was made prior to January 1, 1979, but the opinion was not rendered until this date.

Joseph J. Wantland, Shepherdsville, for appellant.

Robert F. Stephens, Atty. Gen., Frankfort, J. Gerald Henry, Asst. Atty. Gen., Frankfort, for appellee.

Before HOWARD, HOWERTON and PARK, JJ.

PARK, Judge.

William Cooper appeals from a judgment of the Bullitt Circuit Court entered on a jury verdict finding Cooper guilty of trafficking in cocaine and marijuana. On the cocaine conviction, Cooper received a sentence of ten years imprisonment and a fine of $5,000; on the marijuana conviction, he received a sentence of 12 months imprisonment in the county jail and a fine of $500.

On appeal, Cooper raises three issues: (1) whether his arrest for possession of marijuana was illegal because it was made without a warrant; (2) whether the trial court erred in overruling his motion to suppress evidence seized in a warrantless search of his automobile; and (3) whether the trial court erred in failing to make findings of fact on his motion to suppress evidence.

I

On November 23, 1976, William Cooper was operating a 1971 Cadillac northbound on Interstate 65 in Bullitt County when he was stopped by Kentucky State Trooper Lee Arnold. Trooper Arnold testified that he was making traffic radar checks on I–65 at Lebanon Junction when he observed Cooper's car traveling at 70 miles per hour in a 55 miles per hour zone.

After stopping Cooper's car, the trooper approached Cooper and asked him to produce his driver's license. When Cooper lowered the driver's window, the trooper smelled marijuana smoke emanating from Cooper's car. Cooper's car was parked partially on the main traveled part of the highway. In order to avoid the danger from the highway traffic, Trooper Arnold circled the vehicle and opened the door opposite the driver. According to Arnold, he told Cooper that he smelled marijuana smoke, and he announced his intention to search the vehicle. Arnold testified that Cooper became very excited and threw open his ashtray to reveal several marijuana "roaches" stating: "This is all I've got. You wouldn't bust a man for having a few roaches of marijuana would you?" Cooper denied making the statement or opening the ashtray. The trooper ordered Cooper out of the car and placed him under arrest for possession of marijuana.

After placing Cooper in the rear of his police cruiser, Arnold returned to the automobile and seized the marijuana "roaches." Believing that Cooper had more marijuana close at hand, Arnold searched the floor of the vehicle to "see if there was any more scattered in the car." During his search, he discovered a black electric razor case underneath the front seat. The case was sealed with two-inch heavy duty adhesive tape. When he removed the tape and opened the case, Arnold discovered three bags of a white substance which later provided to be cocaine.

Arnold radioed requesting assistance, and a state narcotics agent who was in the area was sent to the scene. Arnold closed Cooper's car doors and returned to his cruiser to await the arrival of the special agent. When Arnold returned to his cruiser, he discovered that Cooper had stuck a coat hanger through the cage mesh screen of the cruiser into the front seat area in an apparent attempt to escape. After handcuffing Cooper, Arnold searched him and the area in which he had been sitting in the cruiser. As a result of this search, the trooper discovered an additional packet of marijuana under the seat where Cooper had been sitting.

When the narcotics agent arrived, Arnold showed him the marijuana and cocaine he had discovered, and the agent left to obtain a search warrant to search the rest of the car. Cooper's car was towed to a private garage in Lebanon Junction. The car was under police guard at all times. Shortly after the car reached the garage, the narcotics agent arrived with the search warrant, and he and Arnold proceeded to search the remainder of the car. A search of the trunk and a false panel on the dashboard uncovered additional marijuana and a weapon which has been made the subject of an independent and unrelated charge against the defendant.

## II

Cooper argues that his arrest and the subsequent search were unlawful because he was arrested without a warrant on a misdemeanor charge which was not committed within the officer's presence. KRS 431.005. Cooper asserts that Trooper Arnold did not see, hear, or smell him *use* marijuana at the time of their initial encounter; therefore, Arnold could only have had a suspicion that a misdemeanor had been committed. Cooper cites cases holding that the investigating officer at the scene of an automobile collision may not arrest the intoxicated operator of the vehicle for driving while intoxicated because the offi-

cer was not present when the offense was being committed. *Cowan v. Commonwealth*, 308 Ky. 842, 215 S.W.2d 989 (1948); *Powell v. Commonwealth*, 307 Ky. 545, 211 S.W.2d 850 (1948); D. Murrell, *Kentucky Criminal Practice* § 3.06 (1975).

Cooper's argument fails for two reasons. First, Arnold was not arresting Cooper for "using" marijuana. In that case, Cooper could reasonably argue that the "use" did not occur in Arnold's presence. Cooper was arrested for "possession" of marijuana, and there is ample evidence to support the conclusion that Arnold had probable cause to believe that Cooper was violating the law in his presence by being in possession of the marijuana. When he observed the speeding violation, Arnold had the right to stop Cooper's car and demand to see his driver's license. When Cooper lowered the driver's window of his car, Arnold detected marijuana smoke which he recognized from past training and experience. The marijuana smoke reasonably caused Arnold to believe that Cooper was then illegally possessing marijuana.

 It is a fundamental principle that a policeman may "observe" with any of his five senses for purposes of a misdemeanor arrest. D. Murrell, *supra*, § 3.06 (1975). As long ago as 1925, this state's highest court held that a warrantless search could be based upon smelling illegal liquor. *Commonwealth v. Johnson*, 206 Ky. 701, 268 S.W. 345 (1925). The federal courts have also recognized a "plain smell" analogue to the "plain view" doctrine. *See Chapman v. U. S.*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); *Johnson v. U. S.*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *U. S. v. Troise*, 483 F.2d 615 (5th Cir. 1973), *cert. denied*, 414 U.S. 1066, 94 S.Ct. 574, 38 L.Ed.2d 471 (1973). Therefore, when Trooper Arnold approached the car and smelled marijuana smoke, he had probable cause to believe that a misdemeanor was being committed in his presence by Cooper, and the arrest without a warrant was proper. KRS 431.005.[1]

---

1. *Commonwealth v. Hagan*, Ky., 464 S.W.2d 261 (1971), states:

If, at that time, the officer believes that a misdemeanor has been committed in his

Second, the validity of the search does not depend upon the legality of the arrest. The search is not justified as "incident" to Cooper's arrest. The warrantless search of Cooper's car is justified only if based upon "probable cause" plus "exigent circumstances." The validity of Cooper's arrest is not essential to the validity of the search.

## III

Cooper claims that the warrantless search of his car was unreasonable and illegal under the Fourth and Fourteenth Amendments to the United States Constitution and Section 10 of the Kentucky Constitution. The cocaine conviction was the direct result of the warrantless seizure of the electric razor case in which the cocaine was found. The conviction of trafficking in marijuana was a result of the search pursuant to a warrant at the garage, but the warrant was based in large part upon the fruits of the earlier warrantless search. Both convictions rest, at least in part, on the validity of the warrantless search of the electric razor case.

All warrantless searches are unreasonable and thus illegal unless they fall within one of the limited exceptions to the general rule that a search must be based upon a valid warrant. There is no general automobile exception to the search and seizure provisions of the federal and state constitutions. However, when probable cause to search an automobile is accompanied by exigent circumstances, a warrantless search may be justified. Neither "probable cause" nor "exigent circumstances" alone will justify a warrantless search; both factors must be present. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Middleton v. Commonwealth,* Ky., 502 S.W.2d 517 (1973); *Ison v. Commonwealth,* Ky., 471 S.W.2d 712 (1971). Assuming that the search of Cooper's car and seizure of the electric razor case was justified by probable cause and exigent circumstances, the further question is presented whether Trooper Arnold could lawfully open and search the taped razor case without obtaining a warrant.

Probable cause existed at every stage of the search. Arnold had a right to stop Cooper for the speeding violation. Likewise, he acted lawfully in approaching Cooper's car where he smelled marijuana smoke emanating from the car. The smell of marijuana smoke from the car gave Arnold probable cause to open the car door and search the ashtray for contraband. See *Commonwealth v. Hagan,* Ky., 464 S.W.2d 261 (1971). Having seized the six "roaches" from the ashtray, Arnold had probable cause to believe that other contraband was in the car. As Arnold reasoned, it was probable that Cooper had a supply of marijuana within easy reach as he smoked while driving along the interstate highway. In fact, additional marijuana was later found behind the false panel in the dashboard. When Arnold found the heavily taped razor case under the front seat, he had probable cause to believe that it contained contraband rather than an electric razor. The discovery of the cocaine provided probable cause to believe that other contraband would be found in the car which justified the issuance of the search warrant. The serious question is whether the probable cause was accompanied by exigent circumstances justifying a warrantless search.

Cooper contends that there were no exigent circumstances which justified a warrantless search. From the point in time when Cooper was arrested and placed in the cruiser, the police were in complete control of the Cooper car. The police later obtained a search warrant before making a search

---

presence on the basis of what he sees and hears, or if he believes that a felony has been committed and the person or persons whom he has stopped have committed it, he may place him or them under arrest and may forthwith proceed to search the automobile incident to arrest.

This court cannot believe that the failure to include the sense of smell was a deliberate omission.

of the trunk and other portions of the car. Because the warrant was obtained to complete the search at the garage, Cooper argues that there was no necessity for Arnold to make the initial warrantless search. He cites *Middleton v. Commonwealth, supra.* The *Middleton* case relied upon the decision in *Coolidge v. New Hampshire, supra,* for the proposition that probable cause cannot justify a warrantless search of an automobile in the absence of exigent circumstances which make it impractical to obtain a warrant.

Both the *Middleton* and *Coolidge* cases are easily distinguished on their facts. In *Middleton,* the police obtained a warrant to search the defendant's car which was parked in front of the defendant's home, but the warrant was invalid because of the insufficiency of the affidavit upon which the warrant was based. In *Coolidge,* the police searched the defendant's car which was parked in the driveway of his home. The search was pursuant to a warrant which was invalid because not issued by a neutral and detached magistrate. In both cases, the cars were unoccupied, and there was no danger that the cars would be moved.

In the present case, Cooper's car was stopped on an interstate highway. Trooper Arnold had only a fleeting opportunity to search Cooper's car. If Trooper Arnold had attempted to secure a search warrant before initiating any search of the car, Cooper could have fled the scene and disposed of the cocaine and marijuana in his car. Arnold had probable cause to search based upon his smelling the marijuana smoke as he stood beside the Cooper car. The trooper was faced with a "now or never" situation that justified an immediate warrantless search. *Chambers v. Maroney, supra,* 399 U.S. at 50–51, 90 S.Ct. at 1980–81.

The six "roaches" in the ashtray were not in plain view before Arnold opened the door of Cooper's car. Therefore, the six "roaches" were seized as a result of a warrantless search. *Patrick v. Commonwealth,* Ky., 535 S.W.2d 88 (1976); *Nichols v. Commonwealth,* Ky., 408 S.W.2d 189 (1966). How-

ever, the warrantless search was justified because based upon probable cause accompanied by exigent circumstances. Having found the six "roaches", it was reasonable for Arnold to search under the front seat for additional contraband. It is true that the car was immobilized as soon as Cooper was arrested and placed in the rear of the police cruiser. However, the initial warrantless search and immobilization of Cooper's car was justified because based upon probable cause accompanied by exigent circumstances. Arnold was not required to suspend continuation of his search until a warrant could be obtained. *Chambers v. Maroney, supra,* 399 U.S. at 51–52, 90 S.Ct. 1975; *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Sullivan v. Commonwealth,* Ky., 481 S.W.2d 49, 51–52 (1972); *Ballard v. Commonwealth,* Ky., 462 S.W.2d 905, 907–08 (1971). Arnold's seizure of the electric razor case was legal. The question remains whether Arnold could open the taped case without a search warrant.

Cooper asserts that Arnold had no right to open the taped razor case without a warrant even if Arnold had been justified in conducting the warrantless search which led to his discovery of the case. Arnold had complete control over the razor case from the moment he removed it from beneath the driver's seat. Cooper asserts that a search warrant was required before Arnold could open the razor case. Cooper relies upon the decision in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

In the *Chadwick* case, the Supreme Court invalidated the warrantless search of a locked footlocker seized by Federal Narcotics Agents as it was placed in the trunk of an automobile in the departure area of the Boston railroad station. The federal agents had probable cause to believe that the footlocker contained contraband. The footlocker was taken to the federal building in Boston where a warrantless search of the footlocker revealed a large quantity of marijuana. The initial seizure of the footlocker was not questioned. The sole question be-

fore the Supreme Court was whether the government had a right to search the contents of the locked footlocker without a search warrant based solely upon probable cause. The government conceded that there was no exigency calling for an immediate search. Pointing out that the footlocker was under the "exclusive dominion" of the federal agents from the time it was seized at the railroad station until it was searched at the federal building, the Supreme Court held that a warrantless search could not be based solely upon the footlocker's mobility alone.

In the *Chadwick* case, the government did not contend that the footlocker's brief contact with the automobile brought the case within the scope of *Chambers v. Maroney, supra.* Therefore, the Supreme Court was not required to decide whether the scope of a lawful warrantless search of an automobile, based on probable cause and exigent circumstances, may be extended to include opening luggage or other closed containers found during the search. Nevertheless, the issue was discussed in the *Chadwick* case. In his dissenting opinion, Justice Blackmun referred to decisions of the federal courts of appeals upholding the search of briefcases, suitcases and footlockers as incident to a lawful warrantless automobile search. He suggested that the search in *Chadwick* would have been valid if the federal agents had postponed the arrest of the defendants until they "started to drive away." 97 S.Ct. at 2489, fn. 4. On the other hand, in his concurring opinion, Justice Brennan questioned whether the warrantless search of an automobile could be extended to "locked containers" found inside the automobile. 97 S.Ct. at 2486, fn. 1. In construing the *Chadwick* case, other courts have reached conflicting results.

In *United States v. Stevie*, 582 F.2d 1175 (8th Cir. 1978), federal agents conducted a warrantless search of a station wagon stopped in order to effect the arrest of the two defendants for trafficking in marijuana. During the course of the search of the station wagon, the federal agents opened a closed suitcase found on the rear floor of the vehicle. The Eighth Circuit Court of Appeals held that the federal agents could lawfully immobilize the station wagon and seize the suitcase without a warrant. However, the court held, on the basis of *Chadwick*, that the agents could not search the contents of the suitcase without a warrant.

The Supreme Court of Arkansas reached a similar result in a case involving the factual situation suggested by Justice Blackmun in his dissenting opinion in *Chadwick*. In *Sanders v. State*, 262 Ark. 595, 559 S.W.2d 704 (1977), the defendant was arrested and the suitcase was seized and searched as the defendant was leaving an airport terminal in a taxicab. The court held that the police had probable cause to search the suitcase for marijuana. Relying on the *Chadwick* case, the court then held that any necessity for a warrantless search ceased when the police stopped the taxicab and brought the suitcase under their exclusive control.

Other courts have placed a different construction on the *Chadwick* decision. In *United States v. Finnegan*, 568 F.2d 637 (9th Cir. 1977), the police conducted a warrantless search of the defendant's car after the defendant was stopped on the highway for speeding. During the course of the search, the police opened a suitcase found in the rear of the car. Based upon what he observed as he stood next to the car, the police officer had probable cause to search the suitcase. The Ninth Circuit Court of Appeals held that probable cause and exigent circumstances justified a warrantless search of the car including the contents of the suitcase. The court held that *Chadwick* did not limit the scope of a lawful warrantless automobile search, stating:

Were we to rule that *Chadwick* applies here and renders the search of the suitcase illegal, inconsistent and contradictory results would follow. For instance, a police officer could search and seize a brick of marijuana lying inside the trunk of a car but not a brick of marijuana lying inside a suitcase in the trunk of a car.

568 F.2d at 641. Even though it construed *Chadwick* to limit the scope of warrantless automobile searches in the *Sanders* case, the Arkansas Supreme Court subsequently followed the *Finnegan* decision in *Berry v. State*, Ark., 565 S.W.2d 418 (1978). In *Berry v. State, supra,* the court upheld the search of a briefcase as a part of a warrantless search of a car based on probable cause and exigent circumstances.

In *United States v. Gaultney,* 581 F.2d 1137 (5th Cir. 1978), the court upheld the warrantless search of a taped Scrabble box found inside a locked pickup truck. The Fifth Circuit Court of Appeals distinguished *Chadwick* on the grounds that it did not involve an automobile search under exigent circumstances. The court also pointed out that the defendant could have little expectation of privacy in the contents of the Scrabble box after he had exhibited the box outside the truck under circumstances which made it practically certain that it contained cocaine.

The perplexing conflict between the courts in interpreting the *Chadwick* case should be resolved in the near future. The Supreme Court has granted certiorari in the *Sanders* case. *Arkansas v. Sanders* —— U.S. ——, 99 S.Ct. 247, 58 L.Ed.2d 236 (1978). Pending the decision of the Supreme Court in the *Sanders* case, the court must make an educated guess concerning the effect of the *Chadwick* decision upon the scope of a warrantless automobile search justified under the *Chambers* case. In our judgment, *Chambers* cannot be construed to justify a warrantless search of all closed containers found during a warrantless automobile search. Likewise, *Chadwick* should not be construed to prohibit any warrantless searches of closed containers discovered during warrantless automobile searches. Both the Fourth Amendment to the United States Constitution and Section 10 of the Kentucky Constitution prohibit only unreasonable searches. The question in every case must be whether it was unreasonable under the circumstances to open the sealed container.

If Trooper Arnold had first sought a warrant to search the razor case, he would have been faced with the problem of Cooper's car. Arnold could not leave the car unguarded parked in the emergency lane while he drove into Lebanon Junction to obtain a warrant. Third persons might break into the unguarded car thereby defeating any further search of the car after examination of the contents of the razor case. Even if the car had been placed under guard while a warrant was being obtained, the car presented a hazard to traffic on I–65 so long as it remained on the shoulder of the highway. *See* 603 KAR 5.025, § 3. Cooper could not be trusted to drive his car into Lebanon Junction because of the danger of escape or destruction of any contraband hidden in the car. Arnold's only practical alternative would have been to have the car towed into Lebanon Junction by a wrecker.

Rather than seek a warrant, Arnold could open the razor case immediately as he did. If the case had not contained cocaine or other contraband, Arnold may have determined that a further search of the car was not required and that it was unnecessary to impound the car. At that point in time, Arnold had seized only the six "roach" butts found in the ash tray during his initial search of the car. Cooper had been charged only with possession of marijuana, a minor misdemeanor. KRS 218A.990(7); KRS 532.020(3). Cooper could have been consulted concerning the safeguarding of the car, and it may not have been necessary to incur the expense of removing the car by wrecker. *See City of Danville v. Dawson,* Ky., 528 S.W.2d 687 (1975).[2]

Removing the car from the highway by wrecker and impounding it would have involved a substantial interference with Cooper's privacy interest in the car. Only a brief period of time was required to open

---

2. The decision to impound the car was not made until after the warrantless search. Therefore, we are not presented with the question whether a warrantless inventory search was valid. *See Ewen v. Commonwealth,* Ky. App., —— Ky.L.Summ. —— (Dec. 22, 1978).

and examine the contents of the razor case. Arnold was not examining personal luggage which one might anticipate to contain numerous items requiring an extensive search. Giving consideration to all of the circumstances, we conclude that the brief examination of the contents of the razor case was less of an intrusion into Cooper's privacy interests than would have been the case if Arnold had impounded the car and its contents by having it removed from the highway by a wrecker. Arnold did not act unreasonably when he opened the taped razor case without first securing a warrant. Exigent circumstances existed.

### IV

 In his last argument, Cooper asserts that the trial judge erred in failing to make findings of fact following the hearing on the motion to suppress the evidence secured by the warrantless search of the car. Citing *Lee v. Commonwealth*, Ky.App., 547 S.W.2d 792 (1977), Cooper contends that the trial judge was required to make a specific finding of fact on the issue whether Cooper voluntarily produced the "roaches" for Trooper Arnold.

There is no merit in Cooper's argument. The case was tried on October 11, 1977, prior to the effective date of RCr 9.78 which now specifically requires findings on motions to suppress evidence. Nevertheless, the *Lee* decision makes clear that better practice dictates that the trial judge make specific findings of fact when ruling on a motion to suppress evidence. However, we note that Cooper made no request for findings at the time that the trial judge denied the motion to suppress and admitted the fruits of the search into evidence. *See Blankenship v. Commonwealth*, Ky.App., 554 S.W.2d 898, 903 (1977). No request for findings of fact was made until after Cooper had himself testified before the jury.

Even more important is the fact that the trial judge did make the crucial finding of fact that Trooper Arnold did smell marijuana smoke emanating from Cooper's car. Therefore, Arnold had probable cause to search, and it is immaterial whether Cooper voluntarily produced the "roaches" after Arnold stated that he smelled marijuana. The record demonstrates that the trial judge gave careful consideration to the extensive arguments by counsel on the issues raised at the suppression hearing. The trial court did not commit prejudicial error by failing to make additional findings of fact.

The judgment of the circuit court is affirmed.

All concur.