Stephen **PIERCY**, Sr., Appellant,

v.

**COMMONWEALTH of Kentucky,** **Appellee.**

No. 2008–CA–002068–MR.

Court of Appeals of Kentucky.

Jan. 29, 2010.

Rob Eggert, Louisville, KY, for appellant.

Jack Conway, Attorney General, M. Brandon Roberts, Assistant Attorney General, Frankfort, KY, for Appellee.

Before ACREE, KELLER, and LAMBERT, Judges.

## OPINION

LAMBERT, Judge.

Stephen Piercy, Sr., entered a conditional guilty plea to trafficking in marijuana (over 8 ounces but less than 5 pounds), trafficking in a controlled substance II, illegal possession of drug paraphernalia, operating a motor vehicle with expired plates, and being a persistent felony offender I ("PFO I"). Piercy reserved the

right to appeal the trial court's denial of his suppression motion and now appeals. After careful review, we affirm.

On February 19, 2007, Louisville Metro Police Department Detectives Ronald Russ and Robert Coomer were working anonymous narcotics complaints that Detective Coomer had received in December 2006, relative to Piercy and his son, Stephen R. Piercy, Jr., who resided at the same residence in Louisville, Kentucky. Detective Coomer indicated that surveillance had been conducted on the residence on three separate occasions in the past and no suspicious activity had been observed.

Detective Coomer indicated that on the date in question, he had seen Piercy's van in the alley behind Piercy's home and that the vehicle had a cracked windshield and an expired license plate. Detective Coomer testified that he observed Piercy emerge from the residence and get into the van. Detective Coomer further testified that Piercy backed out of his parking space and that he stopped Piercy due to the expired license plate as well as the crack in the windshield.

Detective Russ testified that Detective Coomer had already stopped Piercy when Russ entered the alley from a side street. Detective Russ testified that he believed Detective Coomer's lights were on at the time he entered the alley. Piercy, on the other hand, testified that he was not operating the vehicle at the time of the stop and that instead he had been unloading materials from the van and when he got into the van to move it, officers had already pulled in front of and behind his vehicle and were approaching him.

Both Piercy and Detective Coomer testified that Detective Coomer approached Piercy and told him of the anonymous complaints the officers were investigating. Also at this time, Detective Coomer asked Piercy for his license and registration. Piercy produced the items and Detective Coomer gave them to Detective Russ, who performed a warrant check. Detective Coomer said he also told Piercy he had been conducting surveillance on his residence and asked Piercy to step out of the van to discuss the complaints with him. Detective Coomer explained that the past surveillance had not revealed any illegal activity and Coomer wanted to clear up any complaints. Detective Coomer then asked Piercy for consent to search Piercy's van and according to Detective Coomer, Piercy refused, saying he was in a hurry and needed to leave.

Meanwhile, Detective Russ determined that there were no outstanding warrants for Piercy and returned to the van, where Detective Coomer was still speaking with Piercy. At this time Detective Coomer advised that he was going to have his drug sniffing dog check the van. As Detective Coomer proceeded to walk his dog towards the van, the dog "hit" on Piercy by sitting down next to him. Detective Coomer checked Piercy and found marijuana "shake"[1] in Piercy's pockets. Detective Coomer then took the dog around Piercy's van. The dog alerted on the driver's side door of the van. Detective Coomer decided to take the dog into the van, and the dog went over to a bucket and alerted by placing his nose on a tin inside the bucket. Detective Coomer entered the van, searched the tin, and found marijuana inside.

Detective Cooper testified that after the search of the van, he asked Piercy if he could search his residence to clear up the prior complaints he'd been investigating. According to Piercy, Detective Cooper asked if there was anything inside the house, and Piercy stated that there was not. Piercy testified that he wanted to call

---

**1.** Marijuana shake is a term used to refer to small pieces of marijuana.

his attorney, and began walking toward the house to do so because the officers had taken his cell phone. Piercy further testified that he left the door to his residence open and the officers followed him inside, assuming that they had permission to search the house. However, Detective Cooper testified that Piercy granted them permission to enter the house by saying "that's fine."

Detectives Coomer and Russ smelled marijuana immediately upon entering Piercy's house. The three men sat down at the kitchen table and Detective Coomer began filling out a consent to search form. Upon completing the form, Detective Coomer presented it to Piercy for his review and signature. Piercy declined to sign the authorization form and asked to speak with his attorney, whom Detective Coomer allowed Piercy to call. According to Detective Coomer, Piercy did not ask them to leave his residence.

Detective Coomer began completing the affidavit necessary to obtain a search warrant while the parties waited for Piercy's attorney to arrive. Piercy's counsel testified it took her around fifteen minutes to get to the residence. Upon her arrival, she engaged the officers in casual conversation and did not ask the officers to leave the residence. Other officers arrived at the residence, allowing Detective Coomer to leave in order to seek a search warrant. Other than going in and out the original entry door, all police, Piercy, and counsel congregated in the open area around the table used to complete the consent form. After returning with the search warrant, Detective Coomer and other officers found drugs and related items inside the home.

Piercy was subsequently charged with trafficking in marijuana (more than 8 ounces but less than 5 pounds), trafficking in a controlled substance in the second degree, illegal use or possession of drug paraphernalia, operating a motor vehicle

with an expired license plate, and with being a PFO I. Piercy moved to suppress the evidence found during the searches of his person, van, and residence, as well as the statements made to the police. A suppression hearing was held on March 7, 2008, and the trial court ultimately entered an order denying Piercy's motion. Piercy then entered a conditional guilty plea and was sentenced to ten years' imprisonment. The judgment was withheld and Piercy was placed on probation for a five-year period. This appeal now follows.

This Court's standard of review of a trial court's decision on a motion to suppress is two-fold. *Adcock v. Commonwealth,* 967 S.W.2d 6, 8 (Ky.1998). First, the Court must determine whether the trial court's findings of fact are supported by substantial evidence. *Id.* Substantial evidence means "[e]vidence that a reasonable mind would accept as adequate to support a conclusion" and evidence that, when "taken alone or in the light of all the evidence ... has sufficient probative value to induce conviction in the minds of reasonable men." *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky.2003) (footnotes omitted). If the findings are supported by substantial evidence, they are conclusive and will not be disturbed. *Adcock, supra* at 8. Second, the Court will conduct a *de novo* review of the trial court's application of the law to the established facts to determine whether the ruling was correct as a matter of law. *Id.*

Piercy concedes that with limited exceptions, the trial court's findings of fact were supported by substantial evidence. However, he argues that the trial court erred as a matter of law in holding that he was not stopped when officers approached his van. Piercy then argues that there was not reasonable suspicion necessary to justify a stop, and thus all the subsequent evidence seized in this case was illegally

obtained as a result of the improper stop and must be suppressed. Finally, Piercy argues that the trial court improperly determined that the officers permissibly entered his residence and argues that any evidence seized within the home must be suppressed as the fruit of the poisonous tree. For the reasons stated below, we disagree with Piercy and thus affirm the trial court's denial of Piercy's suppression motion.

A careful review of the record and the facts and testimony presented at the hearing on Piercy's motion to suppress evidence indicates that the trial court's factual findings were supported by substantial evidence. Accordingly, under *Adcock, supra,* the question becomes whether the rule of law as applied to these facts was violated.

■ In its order denying Piercy's motion to suppress, the trial court referenced Piercy's testimony that he was loading the van—not driving it—at the time the officers approached and found that Piercy's movement was not impeded, since he was confronted before he got underway. Thus, Piercy argues that the trial court treated the encounter as consensual and found that Piercy was not subjected to a traffic stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), even though the trial court never specifically stated that Piercy was not stopped and therefore entitled to Fourth Amendment protections. We agree with Piercy that the encounter between him and the police was in fact a stop under *Terry.*

■ "There are three types of interaction between police and citizens: consensual encounters, temporary detentions generally referred to as *Terry* stops, and arrests. The protection against search and seizure provided by the Fourth Amendment to the United States Constitution applies only to the latter two types." *Baltimore v. Commonwealth,* 119 S.W.3d 532, 537 (Ky.App.2003) (footnote omitted). Consequently, a police officer may walk up to an individual, identify himself as a police officer, and ask the individual questions without implicating the Fourth Amendment. *Id.* Here, without explicitly saying so, the trial court determined that Piercy's encounter with the police was consensual. Thus, the court did not address whether the Commonwealth had established that cause existed to stop Piercy for a traffic violation or another permissible reason.

■ Under *Terry,* an investigative stop must be supported by reasonable, articulable suspicion that an offense has been or is about to be committed. *Terry, supra,* at 1884. Piercy argues that the trial court erroneously concluded that the encounter in this case was consensual since Piercy was not driving his vehicle at the time the officers approached him. Even if this is so, we find any such error to be harmless since the investigating officers had a reasonable, articulable suspicion that Piercy was about to drive a vehicle with expired tags, and thus that the officers had grounds to conduct a *Terry* stop.

Piercy counters that the officers had no reason to suspect that criminal activity was occurring or was about to occur because he was not in fact operating his van at the time the officers stopped him. However, Detective Coomer testified that he saw Piercy move the van and that Piercy was inside the van on the driver's side when he stopped him. Thus, it was reasonable for the officers to conclude that criminal activity was occurring under KRS 186.170(1). That statute, in pertinent part, states:

> If the cabinet has prescribed that plates shall continue in use, it shall each year, in addition to the registration receipt, select and give to the owner as further evidence of registration some insignia which may conveniently be attached permanently and conspicuously to the mo-

tor vehicle during each registration year. It shall be the duty of the owner to attach the insignia in the prescribed manner and no person may operate a motor vehicle unless the insignia is affixed upon it.

KRS 186.010(6) defines "operator" as "any person in actual control of a motor vehicle upon a highway."

There appear to be no cases interpreting the meaning of "operating" under KRS 186.010(6). However, the facts indicate that Piercy had moved the van immediately prior to Detective Coomer stopping him. Furthermore, Piercy told police officers that he could not stay and had to leave because he was in a hurry. *Terry* only requires a reasonable suspicion that a crime is occurring or is about to occur. In the instant case, it appears that Piercy was illegally driving a vehicle with expired tags, or at the very least, that he was about to drive a vehicle with expired tags, and was thus about to commit a crime. Accordingly, while we disagree with the trial court that this encounter was consensual, we find that there were reasonable grounds for Officer Coomer to initiate a stop and thus, that the evidence obtained in the search of Piercy's person and van was not improperly obtained.

■ Piercy next argues that he did not consent to the search of his residence and that any evidence obtained therein should be suppressed. However, Piercy uses the terms "entry" and "search" interchangeably in his brief. In this case, the activities constituting the search occurred after Detective Coomer obtained a search warrant. Piercy does not challenge the sufficiency of the search warrant and instead argues that he did not give the officers consent to enter his residence, where they immediately smelled marijuana. Further, he argues that the trial court did not make any findings of fact regarding the issue,

and thus this Court cannot review the issue for error.

A careful review of the trial court's order indicates that it did make factual findings regarding Piercy's consent for Officers Coomer and Russ to enter his residence. The trial court's order states:

Defendant was advised of what was found, and that the complaints also mentioned methamphetamine. The Defendant said there was nothing else. The Detective asked to search Defendant's house and Detective Coomer testified that the Defendant consented. (The Defendant later testified that he denied doing so).

The Defendant and the Detectives walked to his house and he opened the door and went in. The Detectives went in with him and sat down at a table inside to complete a Consent to Search Authorization. The Defendant declined to sign it when it was presented to him, and wanted to call his attorney. The police allowed Defendant to call Ms. Katie Brophy, his attorney, and Ms. Brophy came to the house.

Both Detective Russ and Detective Coomer testified they had smelled marijuana when they walked into Defendant's house, so Detective Coomer started completing the affidavit for a search warrant while they awaited counsel.

Thus, the trial court's order indicates that it believed Detective Coomer's testimony that Piercy initially consented to the officers entering his house. Further, the order also indicates that Piercy's non-verbal conduct indicated that the officers received consent to enter the house, based on Piercy opening the door and allowing the officers to follow him inside and sit at his table. *See United States v. Carter*, 378 F.3d 584, 587 (6th Cir.2004) (Consent to search may also be given by non-verbal means, such as gesture or conduct). In fact, there is nothing in the record (other

than Piercy's testimony later at the suppression hearing) indicating that Piercy ever refused entry into his residence. Piercy never attempted to deny the officers' entry or made any movements whatsoever to prevent them from entering his residence. Thus, it appears that Piercy gave consent for the officers to be inside his home.

Once inside the home, Officers Coomer and Russ immediately smelled marijuana and began preparation for consent to search the rest of the residence. At this point, Piercy refused consent and the officers proceeded with obtaining a search warrant based on the smell of marijuana in the home. Objects exposed to the plain view or smell of officers are not protected by the Fourth Amendment. *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *see also Bishop v. Commonwealth,* 237 S.W.3d 567 (Ky.App.2007); *Cooper v. Commonwealth,* 577 S.W.2d 34 (Ky.App.1979) (holding that the plain view doctrine also applies to plain smells) (*overruled on other grounds by Mash v. Commonwealth,* 769 S.W.2d 42 (Ky.1989)).

There are three requirements for application of the plain view/smell doctrine: (1) the viewer or person detecting the odor had the right to be in position for the view or smell; (2) the viewer or person detecting the odor must have a lawful right to access the object or odor; and (3) the incriminating nature of the object or smell was immediately apparent to the viewer or the person detecting the odor. *Horton,* 496 U.S. at 136–137, 110 S.Ct. 2301. *See also Hallum v. Commonwealth,* 219 S.W.3d 216 (Ky.App.2007). In the present case, the trial court found that the officers were properly in the home, based on the testimony of Officer Coomer and Piercy's non-verbal conduct. Thus, the officers had a right to be in position to observe the smell of marijuana and had a right to access the odor. Further, the incriminating nature of the object or smell was immediately apparent to both Detective Coomer and Detective Russ. Thus, all three requirements for the plain view/smell doctrine were met and Piercy did not have a privacy interest in the smell emanating from his residence. Therefore, the use of such evidence against Piercy was permitted and the trial court's denial of his suppression motion was proper.

For the foregoing reasons, we hereby affirm the May 5, 2008, order of the Jefferson Circuit Court denying Piercy's motion to suppress evidence seized during the search of his person, vehicle, and residence.

ALL CONCUR.