ACCEPTED
06-15-00108-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
10/20/2015 3:20:41 PM
DEBBIE AUTREY
CLERK

# SIXTH COURT OF APPEALS

## 06-15-00108-CR

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

10/20/2015 3:20:41 PM

DEBBIE AUTREY
Clerk

*Alexander Nathaniel Brenes, Appellant*

*v.*

*State of Texas, Appellee*

On Appeal from the 6th Judicial District Court
Lamar County, Texas
No. 23814

## Appellant's Brief

**Michael Mowla**
**P.O. Box 868**
**Cedar Hill, TX 75106**
**Phone: 972-795-2401**
**Fax: 972-692-6636**
**michael@mowlalaw.com**
**Texas Bar No. 24048680**
**Attorney for Appellant**

*If the Court's decisional process will be significantly aided by oral argument, oral argument is requested*

# I. Identities of Parties and Counsel

Alexander Nathaniel Brenes, Appellant.

Michael Mowla, attorney for Appellant on appeal

Don Haslam, attorney for Appellant at trial

State of Texas, Appellee.

Gary Young, Lamar County District Attorney

Laurie Pollard, Lamar County Assistant District Attorney

Jill Drake, Lamar County Assistant District Attorney

Hon. William Harris, Presiding Judge, Lamar County Court at Law, sitting for the 6th Judicial District Court, Lamar County

**II.    Table of Contents**

**I.**    Identities of Parties and Counsel ..........................................................2

**II.**    Table of Contents..........................................................................3

**III.**    Index of Authorities.......................................................................5

**IV.**    Statement of the Case and Jurisdiction....................................................12

**V.**    Statement Regarding Oral Argument ......................................................15

**VI.**    Issues Presented............................................................................16

**VII.**    Facts.......................................................................................17

**VIII.** Summary of the Arguments.................................................................21

**IX.**    Argument ..................................................................................24

1.    Issue One: The trial court erred in adjudging Appellant guilty of possession of a controlled substance in penalty group 2 under Count Two because the evidence showed only that Appellant possessed a substance called "methylendioxy methamphetamine."...................................................................24

   **i.**    No offense was legally admitted with respect to Count Two .................24

   **ii.**    Conclusion.........................................................................27

2.    Issue Two: Appellant is entitled to have the plea bargain set aside because the parties agreed to – and the trial court imposed – sentences that were illegal under applicable law, so this Court should correct the illegal sentences and remand this case back to the trial court for resentencing under the correct range of punishment. In the alternative, Appellant is entitled to withdraw his pleas of guilty because they were not intelligent or voluntary since Appellant was misinformed by the trial court about the benefits of the State's punishment recommendations or possible consequences of pleading not guilty. .........................................28

   **i.**    Fundamental error occurred in the sentences because the punishment assessed is outside the ranges chosen by the State .........................................................................28

   **ii.**    This Court should correct the illegal sentences and remand this case back to the trial court for resentencing under the correct range of punishment...................................................34

iii. In the alternative, Appellant is entitled to withdraw his pleas of guilty because they were not intelligent or voluntary since Appellant was misinformed by the trial court about the benefits of the State's punishment recommendations or possible consequences of pleading not guilty. ........................38

iv. Conclusion ................................................................................41

3. Issue Three: The trial court erred in denying the motion to suppress the fruits from the search of Appellant's vehicle because the evidence showed that before developing probable cause that the vehicle contained hidden contraband, the police officer effectively seized the vehicle without benefit of a search warrant and without probable cause, but rather based solely on Appellant's arrival at the home of Angela Langston and at the request of Tiffany Deaton, which based on the officer's understanding of text messages sent by Deaton about bringing "green" to the home, the officer assumed was for the purpose of delivering marijuana. ........................................................42

i. No exception to the warrant requirement was shown ............42

ii. The lawful seizure, "plain smell" option does not apply ........44

iii. Automobile exception does not apply ....................................49

iv. Search incident to an arrest exception does not apply ............57

v. Conclusion ................................................................................59

4. Issue Four: The trial court erred in accepting Appellant's guilty plea without first ruling that the recording of Appellant's statement at the Paris Police Department was inadmissible because it: (1) did not reflect that during the recording, Appellant was given the warning in Texas Code of Criminal Procedure Article 38.22 § 2, which is required under Article 38.22 § 3(a)(2), and (2) was illegally obtained as a result of the arrest of Appellant, which was unlawful because the arrest was based on the fruits of the illegal search of Appellant's vehicle. ...................60

vi. Conclusion ................................................................................70

X. Conclusion and Prayer ........................................................................71

XI. Certificate of Service ..........................................................................72

XII. Certificate of Compliance with Tex. Rule App. Proc. 9.4 ..............72

4

## III. Index of Authorities

**Cases**

*Abernathy v. State*, 963 S.W.2d 822 (Tex. App. San Antonio 1998, pet. ref.).................................................................68

*Adams v. Williams*, 407 U.S. 143 (1972).................................................55

*Adsani v. Miller*, 139 F.3d 67 (2nd Cir. 1998)........................................37

*Anderson v. State*, 787 S.W.2d 221 (Tex. App. Fort Worth 1990) ........................................................................................66

*Arizona v. Gant*, 556 U.S. 332 (2009) ....................................................53

*Armstrong v. State*, 550 S.W.2d 25 (Tex. Crim. App. 1976) (op. on rehearing).....................................................................48

*Baldwin v. State*, 278 S.W.3d 367 (Tex. Crim. App. 2009) ...................49

*Bass v. State*, 723 S.W.2d 687 (Tex. Crim. App. 1986) .........................66

*Benavides v. State*, 600 S.W.2d 809 (Tex. Crim. App. [Panel Op.] 1980)..........................................................................49

*Benavides v. State*, 680 S.W.2d 899, 901, 902, 903 (Tex. App. Houston [1st Dist.] 1984, *pet. ref.*) (Cohen, J., dissenting).........................40

*Berkemer v. McCarty*, 468 U.S. 420 (1984) ..........................................67

*Berkemer v. McCarty*, 468 U.S. 420 (1984) ..........................................68

*Bible v. State*, 162 S.W.3d 234 (Tex. Crim. App. 2005) .........................70

*Boykin v. Alabama*, 395 U.S. 238 (1969) ...............................................40

*Brown v. State*, 605 S.W.2d 572 (Tex. Crim. App. 1980).......................54

*Burgett v. State*, 865 S.W.2d 594 (Tex. App. Fort Worth 1993, *pet. ref.*) .............................................................................33

*California v. Carney*, 471 U.S. 386 (1985) ................................. 50, 51, 54

*Carrasco v. State*, 712 S.W.2d 120 (Tex. Crim. App. 1986) ..................59

*Carroll v. State*, No. 02-11-00265-CR (Tex. App. Fort Worth June 6, 2013, no pet.) (mem. op., not designated for publication) ................................................................63

*Carroll v. United States*, 267 U.S. 132 (1925) ............................. 50, 56

*Childress v. State*, 784 S.W.2d 361 (Tex. Crim. App 1990) ................................... 32

*Chimel v. California*, 395 U.S. 752 (1969) ................................................................. 59

*Coleman v. State*, 955 S.W.2d 360 (Tex. App. Amarillo 1997,
    *no pet.*) (Quinn, J., dissenting) ................................................................. 36

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971) .................................................... 56

*Crabtree v. State*, 389 S.W.3d 820 (Tex. Crim. App. 2012) ................................... 32

*Davison v. State*, 405 S.W.3d 682 (Tex. Crim. App. 2013) ................................... 39

*Delaware v. Prouse*, 440 U.S. 648 (1979) ................................................................. 45

*Dickerson v. United States*, 530 U.S. 428 (2000) ................................................ 64, 65

*Dowthitt v. State*, 931 S.W.2d 244 (Tex. Crim. App. 1996) ................................... 68

*Draper v. United States*, 358 U.S. 307 (1959) ........................................................ 55

*Edwards v. Arizona*, 451 U.S. 477 (1981) ................................................................. 61

*Ellerbee v. State*, 631 S.W.2d 480 (Tex. Crim. App. 1981) (op.
    on original submission, disposition changed on other
    grounds on rehearing) ................................................................................. 32

*Escamilla v. State*, 143 S.W.3d 814 (Tex. Crim. App. 2004) ................................. 66

*Ex parte Elliott*, 746 S.W.2d 762 (Tex. Crim. App. 1988) .................................... 25

*Ex Parte Hill*, 528 S.W.2d 125 (Tex. Crim. App. 1975) ........................................ 34

*Ex parte Johnson*, 12 S.W.3d 472 (Tex. Crim. App. 2000) ................................... 37

*Ex parte Patterson*, 969 S.W.2d 16 (Tex. Crim. App. 1998) ................................. 26

*Ex Parte Rich*, 194 S.W.3d 508 (Tex. Crim. App. 2006) .................................. 31, 35

*Ex parte Smith*, 678 S.W.2d 78 (Tex. Crim. App. 1984) ........................................ 40

*Ex parte Spaulding*, 687 S.W.2d 741 (Tex. Crim. App. 1985 ............................... 26

*Flemming v. State*, 949 S.W.2d 876 (Tex. App. Houston [14th
    Dist.] 1997, *no pet.*) ................................................................................. 69

*Flores v. State*, 895 S.W.2d 435 (Tex. App. San Antonio 1995,
    *no writ*) ........................................................................................................ 59

*Florida v. Royer*, 460 U.S. 491 (1983) ..................................................................... 55

*Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005) ........................................ 42

*Franklin v. State*, 976 S.W.2d 780 (Tex. App. Houston [1st
    Dist.] 1998, *pet. ref.*) ................................................................................. 50

*Franks v. State*, 712 S.W.2d 858 (Tex. App. Houston [1st Dist.] 1986, *pet. ref.*)......................................................................70

*Griffin v. Illinois*, 351 U.S. 12 (1956) (Frankfurter, J., concurring).............................................................................37

*Guzman v. State*, 959 S.W.2d 631 (Tex. Crim. App. 1998) ......44

*Harper v. State*, 704 S.W.2d 546 (Tex. App. Houston [14th Dist.] 1986, *pet. ref.*)..............................................................54

*Harris v. State*, No. 06-14-00162-CR, 2015 Tex. App. LEXIS 8046 (Tex. App. Texarkana, July 31, 2015, *no pet.*) (not yet reported)...........................................................................46

*Harvill v. State*, 13 S.W.3d 478 (Tex. App. Corpus Christi 2000, *no pet.*) .........................................................................34

*Heath v. State,* 817 S.W.2d 335 (Tex. Crim. App. 1991) (plurality op. on rehearing) .................................................35

*Hernandez v. State*, 867 S.W.2d 900 (Tex. App. Texarkana 1993, *no pet.*) ........................................................................46

*Herring v. State*, 758 S.W.2d 849 (Tex. App. Corpus Christi 1988, *pet. ref.*)............................................................................54

*Hopkins v. State*, No. 05-14-00146-CR, 2015 Tex. App. LEXIS 5468 (Tex. App. Dallas, May 28, 2015), *pet. granted* in No. PD-0794-15 (Tex. Crim. App., August 26, 2015)........30

*Horton v. California*, 496 U.S. 128 (1990)...............................55

*Illinois v. Gates*, 462 U.S. 213 (1983) ....................................55

*In re Beck*, 26 S.W.3d 553 (Tex. App. Dallas 2000, orig. proceeding) ......................................................................36

*Kniatt v. State*, 206 S.W.3d 657 (Tex. Crim. App. 2006).........40

*Kothe v. State*, 152 S.W.3d 54 (Tex. Crim. App. 2004) ...........45

*Lindsey v. Normet*, 405 U.S. 56, 77 (1972) ............................37

*Liverman v. State*, No. PD-1595-14, 2015 Tex. Crim. App. LEXIS 992, at *7 (Tex. Crim. App. Sept. 23, 2015) (not yet reported)...........................................................................25

*Martin v. State*, 780 S.W.2d 497 (Tex. App. Corpus Christi 1989, *pet. ref.*)............................................................................51

7

*McCain v. State*, 67 S.W.3d 204 (Tex. Crim. App. 2002).................................27

*McKune v. Lile*, 536 U.S. 24 (2002) ..............................................................65

*Meek v. State*, 790 S.W.2d 618 (Tex. Crim. App. 1990)...............................67

*Melton v. State*, 790 S.W.2d 322 (Tex. Crim. App. 1990) ............................ 66, 67

*Michigan v. Mosley*, 423 U.S. 96 (1975) .......................................................61

*Miles v. State*, 357 S.W.3d 629 (Tex. Crim. App. 2011).............................25

*Minnesota v. Murphy*, 465 U.S. 420 (1984) ..................................................67

*Missouri v. McNeely*, 133 S.Ct. 1552 (2013)................................................53

*Mizell v. State*, 119 S.W.3d 804 (Tex. Crim. App. 2003)............................35

*Moore v. State*, 545 S.W.2d 140 (Tex. Crim. App. 1976)............................25

*Muse v. State*, 815 S.W.2d 769 (Tex. App. Waco 1991, *no pet.*)..............35

*Neal v. State*, 256 S.W.3d 264 (Tex. Crim. App. 2008) ...............................53

*Neese v. State*, 930 S.W.2d 792 (Tex. App. Beaumont 1996, *pet. ref.*)..................................................................................................56

*New York v. Belton*, 453 U.S. 454 (1981)......................................................53

*Nguyen v. State*, 292 S.W.3d 671 (Tex. Crim. App. 2009) ..........................63

*Nix v. State*, 65 S.W.3d 664 (Tex. Crim. App. 2001) .................................. 26, 27

*North Carolina v. Alford*, 400 U.S. 25 (1970)...............................................40

*Odenthal v. State*, 290 S.W. 743 (1927) (op. on rehearing) .......................45

*Oregon v. Elstad*, 470 U.S. 298 (1985) .........................................................66

*Oriji v. State*, 150 S.W.3d 833 (Tex. App. Houston [1st Dist.] 2004) .......................................................................................................67

*Paez v. State*, 681 S.W.2d 34 (1984) .............................................................66

*Pennsylvania v. Labron*, 518 U.S. 938 (1996).............................................. 50, 55

*Pennsylvania v. Muniz*, 496 U.S. 582 (1990) (plurality opinion)..............64

*Pettigrew v. State*, 908 S.W.2d 563 (Tex. App. Fort Worth 1995, *pet. ref.*)......................................................................................51

*Piercy v. Commonwealth*, 303 S.W.3d 492 (Ky. App. 2010) ......................46

*Powell v. State*, 898 S.W.2d 821 (Tex. Crim. App. 1994) ...........................54

*Reeder v. State*, 428 S.W.3d 924 (Tex. App. Texarkana 2014, *pet. granted*).................................................................43

*Riley v. California,* 134 S.Ct. 2473 (2014) ...........................................43

*Roberts v. State*, 444 S.W.3d 770 (Tex. App. Fort Worth 2014, *pet. ref.*).................................................................................49

*Robinson v. State*, 739 S.W.2d 795 (Tex. Crim. App. 1987) .................40

*Rodriguez v. State*, 838 S.W.2d 780 (Tex. App. Corpus Christi 1992, *no pet.*)..............................................................................57

*Rosales v. State*, 748 S.W.2d 451 (Tex. Crim. App. 1987) ...................36

*Sanders v. State*, 785 S.W.2d 445 (Tex. App. San Antonio 1990, *no pet.*)..............................................................................31

*Schmerber v. California*, 384 U.S. 757 (1966).....................................53

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)................................55

*Scott v. State*, 571 S.W.2d 893 (Tex. Crim. App. 1978)........................67

*Sibron v. New York*, 392 U.S. 40 (1968)..............................................50

*Sigford v. State*, 72 S.W.3d 679 (Tex. App. Beaumont 2001, *pet. ref.*) (Burgess, J., dissenting) ...........................................36

*Soldal v. Cook County, Ill.*, 506 U.S. 56 (1992) ..................................45

*Speth v. State*, 6 S.W.3d 530 (Tex. Crim. App. 1999).........................36

*Stansbury v. California*, 511 U.S. 318 (1994) .....................................68

*State ex rel. Vance v. Hatten*, 600 S.W.2d 828 (Tex. Crim. App. 1980).............................................................................33

*State v. Bailey*, 338 P.3d 702 (Or. 2014) ............................................48

*State v. Carter*, 915 S.W.2d 501 (Tex. Crim. App. 1996).....................56

*State v. Cruz,* 461 S.W.3d 531 (Tex. Crim. App. 2014).......................64

*State v. Cuong Phu Le*, 463 S.W.3d 872 (Tex. Crim. App. 2015)..............................................................................54

*State v. Granville*, 373 S.W.3d 218 (Tex. App. Amarillo 2012), *aff'd*, 423 S.W.3d 402 (Tex. Crim. App. 2014) .........................49

*State v. Grayson*, 336 S.W.3d 138 (Mo. 2011).....................................48

*State v. Guzman*, 959 S.W.2d 631 (Tex. Crim. App. 1998) ..................52

*State v. Iduarte*, 268 S.W.3d 544 (Tex. Crim. App. 2008)......................................62

*State v. Jiminez*, 987 S.W.2d 886 (Tex. Crim. App. 1999) .....................................40

*State v. Lee*, 957 So.2d 76 (Fla. 5th Dist. App. 2007) ............................................47

*State v. Millan*, 916 P.2d 1114 (Ariz. App. 1995) ..................................................46

*State v. Morrow,* 128 625 P.2d 898 (1981)..............................................................46

*State v. Powell*, 306 S.W.3d 761 (Tex. Crim. App. 2010) ......................................48

*State v. Sheppard*, 271 S.W.3d 281 (Tex. Crim. App. 2008) ..................................44

*State v. Steelman*, 93 S.W.3d 102 (Tex. Crim. App. 2002).....................................58

*Stinnett v. State*, 720 S.W.2d 663 (Tex. App. Amarillo 1986, *no pet.*)....................................................................................................70

*Stoddard v. State*, 475 S.W.2d 744 (Tex. Crim. App. 1972)...................................51

*Sutherland v. State*, 436 S.W.3d 28 (Tex. App. Amarillo 2014, *reh. overruled*) ......................................................................................54

*Teal v. State*, 230 S.W.3d 172 (Tex. Crim. App. 2007) ..........................................26

*Texas v. Brown*, 460 U.S. 730 (1983)......................................................................55

*Tollefson v. State*, 352 S.W.3d 816 (Tex. App. San Antonio 2011, *pet. ref.*)....................................................................................................44

*Torres v. State*, 182 S.W.3d 899 (Tex. Crim. App. 2005).......................................57

*United States v. Johns*, 469 U.S. 478 (1985) ..................................................... 44, 52

*United States v. Jones*, 132 S.Ct. 945 (2012) .........................................................53

*United States v. MacCollom*, 426 U.S. 317 (1976) .................................................36

*United States v. Ortiz*, 422 U.S. 891 (1975) ...........................................................49

*United States v. Ross*, 456 U.S. 798 (1982)............................................................54

*United States v. Sharpe*, 470 U.S. 675 (1985) ........................................................55

*Vicioso v. State*, 54 S.W.3d 104 (Tex. App. Waco 2001, *pet. ref.*)........................................................................................................61

*White v. State*, 729 S.W.2d 737 (Tex. Crim. App. 1987) ........................................46

*Wicker v. State*, 740 S.W.2d 779 (Tex. Crim. App. 1987), *cert. denied*, 485 U.S. 938 (1988)..........................................................66

*Williams v. State*, 522 S.W.2d 483 (Tex. Crim. App. 1975) ...................................40

*Williams v. State*, 743 S.W.3d 642 (Tex. Crim. App. 1988) ...................................48

*Wilson v. State*, 621 S.W.2d 799 (Tex. Crim. App. 1981) .......................................50

*Ybarra v. Illinois*, 444 U.S. 85 (1979) ...................................................................55

**Statutes**

Tex. Code Crim. Proc. Art. 11.07 (2015) .................................................................37

Tex. Code Crim. Proc. Art. 14.03 (2010) .................................................................59

Tex. Code Crim. Proc. Art. 38.23 (2010) ......................................................... 13, 42

Tex. Health & Safety Code § 481.002 (2010) ...........................................................25

Tex. Health & Safety Code § 481.103 (2010) ...........................................................24

Tex. Health & Safety Code § 481.113 (2010) ..................................................... 13, 24

Tex. Health & Safety Code § 481.121 (2010) ...........................................................13

Tex. Health & Safety Code § 481.134 (2010) ...........................................................29

Tex. Pen. Code § 12.33 (2010) .................................................................................34

Tex. Pen. Code § 12.41 (2010) .................................................................................32

Tex. Pen. Code § 12.42 (2010) ......................................................................... 13, 29

Tex. Pen. Code § 8.06 (2010) ...................................................................................47

**Rules**

Tex. Rule App. Proc. 25.2 (2015)..................................................................... 14, 35

Tex. Rule App. Proc. 26.2 (2015).............................................................................14

Tex. Rule App. Proc. 39 (2015).................................................................................15

Tex. Rule App. Proc. 9.4 (2015)................................................................................73

Tex. Rule App. Proc. 9.5 (2015)................................................................................72

**Constitutional Provisions**

Tex. Const. Art. 1, § 10............................................................................................64

U.S. Const. Amend. IV .................................................................................... 13, 42

To the Honorable Justices of the Court of Appeals:

Appellant Alexander Nathaniel Brenes submits this Brief in support of the appeal:

## IV.     Statement of the Case and Jurisdiction

This is an appeal of a *Judgment of Conviction by Court* ("*Judgment*") and sentence under cause number 23814 for Possession of Marijuana in an amount greater than five pounds but less than fifty pounds, for which Appellant was sentenced to 20 years in prison (Count One), and for Possession with Intent to Deliver a Controlled substance, namely "ecstasy or methylendioxy methamphetamine of four grams but less than 400 grams," for which Appellant was sentenced to 25 years in prison (Count Two). (CR, 99-102).[1]

On July 15, 2010, a grand jury indicted Appellant, alleging in Count One that on or about April 23, 2010, in Lamar County, Texas, Appellant "intentionally or knowingly possess a usable quantity of marijuana of fifty (50) pounds or less, but more than five (5) pounds," and that the offense was committed within 1,000 feet of the premises of a playground." (CR, 7). *See* Tex. Health & Safety Code § 481.121(b)(4) (2010).

---

[1] The record on appeal consists of the Clerk's Record and Supplemental Clerk's Record, which are cited by "CR" or "CR-Supp" followed by the page number, and two volumes of the reporter's record, which are cited as "RR1" or "RR2," followed by the page number.

In Count Two, the indictment alleged that on or about April 23, 2010, in Lamar County, Texas, Appellant "intentionally or knowingly possess(ed) a controlled substance with the intent to deliver, namely ecstasy or Methylendioxy methamphetamine of four (4) grams or more but less than Four Hundred (400) grams, including any adulterants or dilutants." (CR, 7). *See* Tex. Health & Safety Code § 481.113 (2010).

Under both Counts One and Two, the indictment further alleged that prior to the commission of the offenses, Appellant was finally convicted of felony Possession of a Controlled Substance, namely Methylenedioxy, of four grams or more but less than 200 grams, in the 6th District Court of Lamar County, Texas, on March 3, 2006, in Cause Number 20928. (CR, 7). *See* Tex. Pen. Code § 12.42(b) & (c) (2010).

Appellant filed a motion to suppress the warrantless search conducted by the police. (CR, 40-42). Appellant argued that the evidence against him should be excluded under the Fourth Amendment and Texas Code of Criminal Procedure 38.23(a). (CR, 40-42); *see* U.S. Const. Amend. IV and Tex. Code Crim. Proc. Art. 38.23(b) (2010). The trial court overruled Appellant's motion. (RR1, 119).

Under a plea bargain, Appellant waived trial by jury and pleaded guilty to Possession of Marijuana in an amount greater than five pounds but less than fifty pounds, for which Appellant was sentenced to 20 years in prison (Count One), and

13

Possession with Intent to Deliver a Controlled substance, namely "ecstasy or methylendioxy methamphetamine of four grams but less than 400 grams," for which Appellant was sentenced to 25 years in prison (Count Two). (CR, 79-88, 99-102).

Appellant filed a timely notice of appeal. (CR, 96); *see* Tex. Rule App. Proc. 26.2(a) (2015). Appellant filed a motion for new trial, which was overruled without a hearing by operation of law. (CR, 116-117). The trial court signed a Certification of Defendant's Right of Appeal, certifying that although this is a plea bargain case, Appellant has the right to appeal the trial court's ruling on the motion to suppress. (CR, 114). *See* Tex. Rule App. Proc. 25.2(a)(2) (2015). As a result, this Court has jurisdiction over this appeal. Also, in this Appeal, Appellant challenges the constitutionality of the limitation placed on his right to appeal because he raises other matters over which this Court must exercise jurisdiction.

## V.     Statement Regarding Oral Argument

Although the facts and arguments are thoroughly presented in this Brief, if the Court's decisional process will be significantly aided by oral argument, Appellant will be honored to present oral argument. *See* Tex. Rule App. Proc. 39 (2015).

## VI. Issues Presented

**Issue One**: The trial court erred in adjudging Appellant guilty of possession of a controlled substance in penalty group 2 under Count Two because the evidence showed only that Appellant possessed a substance called "methylendioxy methamphetamine."

**Issue Two**: Appellant is entitled to have the plea bargain set aside because the parties agreed to – and the trial court imposed – sentences that were illegal under applicable law, so this Court should correct the illegal sentences and remand this case back to the trial court for resentencing under the correct range of punishment. In the alternative, Appellant is entitled to withdraw his pleas of guilty because they were not intelligent or voluntary since Appellant was misinformed by the trial court about the benefits of the State's punishment recommendations or possible consequences of pleading not guilty.

**Issue Three**: The trial court erred in denying the motion to suppress the fruits from the search of Appellant's vehicle because the evidence showed that before developing probable cause that the vehicle contained hidden contraband, the police officer effectively seized the vehicle without benefit of a search warrant and without probable cause, but rather based solely on Appellant's arrival at the home of Angela Langston and at the request of Tiffany Deaton, which based on the officer's understanding of text messages sent by Deaton about bringing "green" to the home, the officer assumed was for the purpose of delivering marijuana.

**Issue Four**: The trial court erred in accepting Appellant's guilty plea without first ruling that the recording of Appellant's statement at the Paris Police Department was inadmissible because it: (1) did not reflect that during the recording, Appellant was given the warning in Texas Code of Criminal Procedure Article 38.22 § 2, which is required under Article 38.22 § 3(a)(2), and (2) was illegally obtained as a result of the arrest of Appellant, which was unlawful because the arrest was based on the fruits of the illegal search of Appellant's vehicle.

## VII. Facts

Detective Leigh Foreman of the Paris Police Department was routinely involved in investigating potential narcotics violations. (RR1, 12-14). On April 23, 2010, Foreman was focused on a home at 2331 Maple in Paris because Anson Amis, an investigator with the Lamar County Sheriff's Department, told him that he had received information that Appellant was frequenting the residence "supposedly in possession of marijuana, ecstasy." (RR1, 13-14). It appears, however, that this information was false because Angela Langston admitted that she knew nothing about Appellant selling drugs and had never seen Appellant at the home. (RR1, 75, 76).

On April 23, 2010, Foreman and two other officers went to the home. (RR1, 14, 41). They first made contact with Tiffany Deaton, and after making contact with two other persons, they determined that Angela Langston was the person who lived there. (RR1, 14, 41). The officers obtained Langston's consent for to search the home. (RR1, 14, 41).

The search revealed a small amount of marijuana in a clear plastic baggie in Langston's room, and remnants of marijuana packaging used by Deaton. (RR1, 15). The remnants were large pieces of tape that smelled like marijuana. (RR1, 15). Foreman inferred that the tape was associated with larger bundles of marijuana. (RR1, 15). When questioned about the tape, Deaton stated that her

17

marijuana supplier was Appellant, adding that he had brought marijuana to the home the previous date and she had helped him package marijuana in smaller amounts. (RR1, 17). Deaton denied making this statement at the hearing, and also denied stating that Appellant had marijuana with him the day before. (RR1, 93-96). In fact, Deaton denied ever telling anybody that Appellant sold marijuana. (RR1, 94).

Deaton tried to help herself by agreeing to contact Appellant to see if she could get him to deliver marijuana to the home. (RR1, 17, 101-102). Foreman had Deaton contact Appellant through text messaging. (RR1, 18). Foreman saw that the request was made in what he considered "slang" for marijuana, namely, her message asked if Appellant had any "green." (RR1, 19). Foreman said he assumed Deaton was, in fact, conversing with Appellant. (RR1, 19). In a phone call, the person stated he would be "on his way," and Appellant arrived at the home a short time later, driving a green Toyota as Deaton predicted. (RR1, 19).

The officers were hiding in the home. (RR1, 51-52). Appellant exited his vehicle, walked into the home, and was immediately handcuffed and detained. (RR1, 20, 56, 91). Foreman immediately went outside to the vehicle, and as he approached it, he could "instantly smell marijuana," later described as a strong odor. (RR1, 22). The windows to the vehicle were "down." (RR1, 20). Foreman believed, according to his training, that this smell "allowed" him to search the

vehicle for marijuana. (RR1, 20). Foreman agreed that the smell was the exclusive reason for his decision to search the car. (RR1, 59). Although Appellant refused to consent to a search of the vehicle, and no search warrant was obtained, Foreman searched Appellant's vehicle. (RR1, 20-21, 43).

Foreman found a backpack in the front floorboard that contained marijuana, plastic baggies, and a digital scale. (RR1, 22). Foreman stated that Deaton told him Appellant normally carried his contraband in a backpack. (RR1, 22). In the glove compartment, Foreman found a baggie containing 99 tablets of ecstasy. (RR1, 22-23). Nine bundles of marijuana were found in the trunk of the vehicle. Ultimately, the marijuana weighed out at almost 12 pounds. (RR1, 23). Appellant was transported to the Paris City Jail. (RR1, 25).

Before leaving the scene, Detective Springer attempted to get Appellant to talk with him about the offense. (RR1, 25). Springer advised Appellant of his Miranda rights, and particularly of his right to counsel and to remain silent or terminate the interview. (RR1, 25). Appellant chose not to speak with Springer. (RR1, 25, 61). At the jail, however, Foreman was able to encourage Appellant to talk with him about his activities as a dealer in marijuana and ecstasy. (RR1, 25-28). Foreman explained to Appellant that since he understood that Appellant had requested an attorney when Springer tried to question him, he could (Foreman) not speak with Appellant unless Appellant attempted to speak with him first. (RR1, 25-

19

26). Foreman stated that in response, Appellant denied having requested an attorney when speaking with Springer and "started talking" to Foreman. (RR1, 26). Foreman described Appellant's statement as confessions to being a marijuana and ecstasy dealer to varying degrees. (RR1, 26, 64).

## VIII. Summary of the Arguments

Appellant presents the following arguments: First, Appellant will show that The trial court erred in adjudging Appellant guilty of possession of a controlled substance in penalty group 2 under Count Two because the evidence showed only that Appellant possessed a substance called "methylendioxy methamphetamine."

Second, Appellant will show that he is entitled to have the plea bargain set aside because the parties agreed to – and the trial court imposed – sentences that were illegal under applicable law, so this Court should correct the illegal sentences and remand this case back to the trial court for resentencing under the correct range of punishment. In the alternative, Appellant will show that he is entitled to withdraw his pleas of guilty because they were not intelligent or voluntary since Appellant was misinformed by the trial court about the benefits of the State's punishment recommendations or possible consequences of pleading not guilty.

Third, Appellant will show that the trial court erred in denying the motion to suppress the fruits from the search of Appellant's vehicle because the evidence showed that before developing probable cause that the vehicle contained hidden contraband, the police officer effectively seized the vehicle without benefit of a search warrant and without probable cause, but rather based solely on Appellant's arrival at the home of Angela Langston and at the request of Tiffany Deaton, which based on the officer's understanding of text messages sent by Deaton about

bringing "green" to the home, the officer assumed was for the purpose of delivering marijuana.

Finally, Appellant will show that the trial court erred in accepting Appellant's guilty plea without first ruling that the recording of Appellant's statement at the Paris Police Department was inadmissible because it: (1) did not reflect that during the recording, Appellant was given the warning in Texas Code of Criminal Procedure Article 38.22 § 2, which is required under Article 38.22 § 3(a)(2), and (2) was illegally obtained as a result of the arrest of Appellant, which was unlawful because the arrest was based on the fruits of the illegal search of Appellant's vehicle.

Appellant will ask this Court to reverse the Judgment and sentence and under Count Two, enter a judgment of acquittal as to that offense. In the alternative, Appellant will ask this Court to remand Count Two to the trial court for a new trial with instructions that none of the evidence seized from Appellant or Appellant's statements to the police are admissible. Again in the alternative, Appellant will ask this Court to remand Count Two to the trial court for reassessment of punishment.

As to Count One, Appellant will ask this Court to reverse the Judgment and sentence and remand Count One to the trial court for a new trial with instructions that none of the evidence seized from Appellant or Appellant's statements to the

22

police are admissible.  In the alternative, Appellant will ask this Court to remand

Count One to the trial court for reassessment of punishment.

## IX.   Argument

1. <u>Issue One</u>: **The trial court erred in adjudging Appellant guilty of possession of a controlled substance in penalty group 2 under Count Two because the evidence showed only that Appellant possessed a substance called "methylendioxy methamphetamine."**

   i.   **No offense was legally admitted with respect to Count Two**

It is unclear what offense was attempted or intended to be alleged in Count Two, because neither "ecstasy" nor "methylendioxy methamphetamine" is listed in Texas Health and Safety Code Chapter 481 as a controlled substance. It is possible that the grand jury sought to allege possession of "3,4-methylenedioxy methamphetamine (MDMA, MDM)." *See* Tex. Health & Safety Code § 481.103(1) (2010). If so, then perhaps the State sought to prosecute Appellant for violating Texas Health and Safety Code § 481.113(d), which is punishable "by imprisonment in the Texas Department of Criminal Justice for life or for a term of not more than 99 years or less than 10 years, and a fine not to exceed $100,000." *See* Tex. Health & Safety Code § 481.113(d) (2010).

However, because the substance allegedly possessed by Appellant was not contraband, the conviction of Appellant under Count Two of the indictment should be declared a nullity. Neither Appellants plea nor judicial confession admitted a violation of the statute cited in the judgment or any criminal conduct for that matter. (CR, 101); *see Ex parte Elliott*, 746 S.W.2d 762, 764 (Tex. Crim. App. 1988) (To be valid, an indictment must charge each essential element of the

offense sought to be charged) and *Moore v. State*, 545 S.W.2d 140, 142 (Tex. Crim. App. 1976) (In a drug case where the indictment does not allege an offense, the conviction based on the indictment is void).

To be a "controlled substance," the item possessed must be something "listed in Schedules I through V or Penalty Groups 1, 1-A, or 2 through 4." Tex. Health & Safety Code § 481.002(5) (2010); *see also Miles v. State*, 357 S.W.3d 629, 638 (Tex. Crim. App. 2011) (finding insufficient evidence as to an essential element of the *particular drug offense for which the appellant was tried*). The question thus is, "Does certain conduct actually constitute an offense under the statute with which the defendant has been charged?" *Liverman v. State*, No. PD-1595-14, 2015 Tex. Crim. App. LEXIS 992, at *7 (Tex. Crim. App. Sept. 23, 2015) (not yet reported). Like all other statutory construction questions, this is a question of law that must be reviewed by this court de novo. *Id.*

Appellant notes that he does not challenge the sufficiency of the indictment, for he might be precluded from doing so under *Teal v. State*, 230 S.W.3d 172, 181 (Tex. Crim. App. 2007) (an indictment need only accuse "someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute"); *cf. Ex parte Patterson*, 969 S.W.2d 16, 19 (Tex. Crim. App. 1998) (an offense must be charged otherwise "the judgment's voidness is cognizable at anytime."). But, Appellant need not attack the indictment because

even if an offense under Health & Safety Code § 481.113(d) is considered to have been alleged in Count Two due to the operation of Texas Code of Criminal Procedure Article 1.14(b), Appellant's plea or confession that he was guilty of the facts alleged does not necessary mean that he was guilty of the particular crime for which he was being prosecuted.

Because his conviction under count two is void, Appellant is entitled to immediate relief. A void judgment may be recognized by any court at any time, and is "incapable of any confirmation, ratification or enforcement in any manner or to any degree." *Ex parte Spaulding*, 687 S.W.2d 741, 743 (Tex. Crim. App. 1985). *See also Nix v. State*, 65 S.W.3d 664, 668 (Tex. Crim. App. 2001). A "void" conviction or judgment is one in which the trial court lacked jurisdiction over the person or subject matter or the trial court lacks qualification to act in any manner, or one in which there is no evidence to support the conviction (as opposed to insufficient evidence). *See Nix*, 65 S.W.3d at 668 and *McCain v. State*, 67 S.W.3d 204, 209 (Tex. Crim. App. 2002). Any perceived limitation on this court's jurisdiction to observe and remedy this problem presented by Texas Rule of Appellate Procedure 25.2(a)(2)(B) is further discussed below.

Out of caution, in case this Court concludes otherwise than what Appellant argues in this Issue, Appellant will next discuss another error, which is the fact that

26

his sentence failed to comply with the applicable law, which is also the case with respect to the possession of marijuana charge.

### ii. Conclusion

The trial court erred in adjudging Appellant guilty of possession of a controlled substance in penalty group 2 under Count Two because the evidence showed only that Appellant possessed a substance called "methylendioxy methamphetamine." As a result, Appellant asks this Court to enter a judgment of acquittal as to Count Two of the Judgment.

2. **Issue Two**: Appellant is entitled to have the plea bargain set aside because the parties agreed to – and the trial court imposed – sentences that were illegal under applicable law, so this Court should correct the illegal sentences and remand this case back to the trial court for resentencing under the correct range of punishment. In the alternative, Appellant is entitled to withdraw his pleas of guilty because they were not intelligent or voluntary since Appellant was misinformed by the trial court about the benefits of the State's punishment recommendations or possible consequences of pleading not guilty.

   i. **Fundamental error occurred in the sentences because the punishment assessed is outside the ranges chosen by the State**

For purposes of assessing punishment, the indictment alleged that the offenses were committed "in, on, or within 1,000 feet of premises of a playground." If this allegation is proved, the penalty range for the offense alleged in Count One ("intentionally or knowingly possess a usable quantity of marijuana of fifty (50) pounds or less, but more than five (5) pounds," and that the offense was committed within 1,000 feet of the premises of a playground") would increase from two to ten years in prison (for a third-degree felony) to seven to ten years in prison and double the possible fine. Tex. Health & Safety Code § 481.134(c) (2010).

With respect to the Count Two ("intentionally or knowingly possess(ed) a controlled substance with the intent to deliver, namely ecstasy or Methylendioxy methamphetamine of four (4) grams or more but less than Four Hundred (400) grams, including any adulterants or dilutants" committed within 1,000 feet of the premises of a playground), such allegation if proved would increase the penalty

28

range from five to 99 years or life in prison to ten to 99 years or life in prison, and double the possible fine to $200,000. Tex. Health & Safety Code § 481.134(c) (2012). The State, however, waived or abandoned those allegations. (RR2, 4).

But, the indictment further alleged that prior to the commission of the offenses, Appellant was finally convicted of felony Possession of a Controlled Substance, namely Methylenedioxy, of four grams or more but less than 200 grams, in the 6th District Court of Lamar County, Texas, on March 3, 2006, in Cause Number 20928. (CR, 7). *See* Tex. Pen. Code § 12.42(b) & (c) (2010). If the State proves this allegation, the penalty ranges for the offenses *may* have changed, and Count Two would become a second-degree felony, and Count One would remain a first-degree felony but would be punishable by 15 to 99 years or life in prison. *See* Tex. Pen. Code § 12.42(a) & (c) (2010).

This statement is made conditionally for two reasons. First, the allegation did not include all of the facts required to make Texas Penal Code § 12.42(a) applicable and the only evidence the State offered in support of an enhanced penalty was that the allegation was "true and correct." (CR, 87; RR2, 8). What the State must have shown is that Appellant "ha[d] previously been finally convicted of a felony other than a state jail felony punishable under Section 12.35(a)." A conviction for possession of controlled substance is not necessarily for a felony other than a state jail felony punishable under Section 12.35(a). And, there has

29

never been an offense known as "possession of Methylenedioxy" defined by Texas law. Thus, a plea of "true" to the enhancement allegation or an acknowledgment of its truth in Appellant's judicial confession was not sufficient to show the "exceptional sentence" provided in Texas Penal Code § 12.42(a) or any other similar provision of law as applied to Appellant. The Court of Criminal Appeals granted review of a similar claim in *Hopkins v. State*, No. 05-14-00146-CR, 2015 Tex. App. LEXIS 5468 (Tex. App. Dallas, May 28, 2015), *pet. granted* in No. PD-0794-15 (Tex. Crim. App., August 26, 2015).

In *Hopkins*, the Court of Criminal Appeals granted review on the issue that the court of appeals erred in finding the evidence sufficient to prove the enhancement allegations. The indictment alleged that prior to the commission of the current offense of aggravated robbery, Hopkins was finally convicted of the felony offense of aggravated assault on August 29, 2003. *Id*. at *14. The State later filed a notice of intent to enhance the punishment based on another prior conviction alleged to have occurred before commission of the aggravated robbery. *Id*. The notice of enhancement alleged the prior final conviction for "aggravated assault" as occurring on "the 4th day of January." Hopkins asserted that the evidence was insufficient to support the enhancement allegations because the State failed to prove the year when the conviction alleged in the notice of enhancement occurred. *Id*. Although Hopkins's trial counsel entered a plea of "true" to both

30

allegations, the court of appeals apparently erred when it relied on *Roberson v. State*, 420 S.W.3d 832 (Tex. Crim. App. 2013) for the proposition that when a person pleads to an enhancement allegation or the sequence of convictions, the State is relieved of the burden to prove the prior convictions because Roberson also recognized an exception when the record affirmatively reflects that the enhancement itself was improper. *Id.* at 838-839. This exception was first recognized in *Sanders v. State*, 785 S.W.2d 445, 448 (Tex. App. San Antonio 1990, *no pet.*). *See also Ex Parte Rich*, 194 S.W.3d 508, 513 (Tex. Crim. App. 2006) (The Court of Criminal Appeals previously confirmed that although there is a general rule that a plea of "true" to an enchantment allegation relieves the State of its burden of proving the prior conviction, there is an exception to this general rule "...when the record affirmatively reflects that the enhancement itself was improper.). *See also Ellerbee v. State*, 631 S.W.2d 480, 481 (Tex. Crim. App. 1981) (op. on original submission, disposition changed on other grounds on rehearing) (an indictment must properly identify the controlled substance in order that the range of punishment may be determined).

The second reason for the conditional nature of Appellant's assertion is that Appellant's argument runs contrary to a common misconception about how Texas Penal Code § 12.41(1) applies in prosecutions under the Controlled Substances Act. *See* Tex. Pen. Code § 12.41(1) (2010). The misconception often originates

31

from the dicta in *Childress v. State*, 784 S.W.2d 361, 365 (Tex. Crim. App 1990) (stating that § 12.41(1) does not encompass a conviction for an offense obtained from a prosecution for an offense not defined or included in the penal code *so long as* "punishment for the offense was classified in terms consonant with punishment provisions of the Penal Code"). This dicta has been used to treat drug offenses as though they were directly subject to the provisions of Texas Penal Code §§ 12.42, 12.425, and 12.43, without the qualification stated in § 12.41(1).

This reasoning in *Childress* is wrong, however, because the Court altered the plain language of the statute, adding something not expressed therein, i.e., the "so long as" exclusion stated above. The Court of Criminal Appeals was not authorized to amend the statute. *Crabtree v. State*, 389 S.W.3d 820, 830-831 (Tex. Crim. App. 2012) ("Like our inability to opine on a law's wisdom, we cannot judicially amend or effectively delete [or add] statutory language in the name of interpretation."); *State ex rel. Vance v. Hatten*, 600 S.W.2d 828, 830 (Tex. Crim. App. 1980) ("The courts, having no legislative powers, may not enlarge or alter the plain meaning of statutory language. Wording in statutes is to be given its literal interpretation when that wording is clearly unambiguous.").

Appellant also notes that the alternative basis for the opinion in *Burgett v. State*, 865 S.W.2d 594, 599 (Tex. App. Fort Worth 1993, *pet. ref.*) was undone by the repeal of Texas Health & Safety Code § 481.107(f), the provision of the

Controlled Substances Act that provided for enhanced penalties for repeat offenders, by the 73rd Legislature (in S.B. 1067 § 2.07), a fact not even noted in the *Burgett* opinion.

Fortunately, it appears that this may not be an issue in this case because an offense under Texas Health & Safety Code § 481.121(b)(4) is a third-degree felony, both under § 481.121 statute and § 12.41(1). And even under the *Childress* dicta, because an offense under § 481.113(d) is *not* classified in terms consonant with punishment provisions of the Penal Code, there can be no dispute about the application of § 12.41(1) when a "penal-code enhancement" is sought, since the conviction is obviously not one "obtained from a prosecution under" the Penal Code.

Because the State chose to rely on the sentencing provisions of subchapter D Texas Penal Code Chapter effectively classified the offense as a third-degree felony despite the more severe punishment provided in Texas Health & Safety Code § 481.113(d), the maximum sentence for the offense described in Count Two of the indictment is 20 years in prison. *See* Tex. Pen. Code § 12.33(a) (2010).

Because the sentence of 25 years in prison assessed with respect to Count Two is in excess of the statutory maximum chosen by the State, it is **void**. (CR, 101). And because the State did not show all of the facts required by Texas Penal Code § 12.42(a) with respect to Count One of the indictment, its effort to enhance

Appellant's punishment for that offense failed and he should have been sentenced to no more than **10 years** confinement as required under Texas Health & Safety Code § 481.121(b)(4).

### ii. This Court should correct the illegal sentences and remand this case back to the trial court for resentencing under the correct range of punishment

A sentence unauthorized by law is fundamental error, rendering the sentence void. *Ex Parte Hill*, 528 S.W.2d 125, 126 (Tex. Crim. App. 1975) (Sentence was void where trial court imposed five year sentence and maximum authorized punishment was four years); *see also Harvill v. State*, 13 S.W.3d 478, 482 (Tex. App. Corpus Christi 2000, *no pet.*) (In a case for criminal nonsupport, at the time the defendant committed it, it was either a Class A misdemeanor or a third-degree felony. The trial court sentenced the defendant under the version of the statute as it existed at the time of sentencing. Because the sentence was unauthorized by law, it was fundamental error, and the sentence was rendered void.); *see also Muse v. State*, 815 S.W.2d 769, 773 (Tex. App. Waco 1991, *no pet.*) (An unauthorized sentence is fundamental error because the fixing of penalties is a "purely legislative function outside ambit of constitutional judicial authority.") and *Heath v. State,* 817 S.W.2d 335, 337 (Tex. Crim. App. 1991) (plurality op. on rehearing) (when a void sentence is obtained as a result of a plea bargain agreement, where specific performance is not an alternative, the remedy is to order the plea of guilty

withdrawn and to return the parties, including the State, to their original positions); *Rich*, 194 S.W.3d at 514 ("Since neither the State nor the trial court has the authority to ensure compliance with a sentence that so greatly exceeds the statutory range of punishment, the proper remedy is to allow Applicant to withdraw his plea and remand the case to the trial court, putting both parties back in their original positions before they entered into the plea bargain.").

Therefore, the errors in sentencing listed above are fundamental and should be corrected by this Court. This is the case even though the scope of this appeal would normally encompass only rulings on pretrial motions. Tex. Rule App. Proc. 25.2(a)(2)(A) (2015); *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003) (A sentence outside the proscribed punishment range is void and illegal). This is long-established law, as in *Mizell*, the court cited cases with similar holdings from 2002, 2001, 1996, and 1979. *Id*. Further, an illegal sentence "has no legal effect." *Id*. at 806. And, any court with jurisdiction can notice and take action upon an illegal or void sentence at any time, *even sua sponte*. *Id*. at 805-807 (emphasis supplied). Finally, "[A] defendant has an absolute and nonwaiveable right to be sentenced within the proper range of punishment established by the Legislature." *Speth v. State*, 6 S.W.3d 530, 532-533 (Tex. Crim. App. 1999); *see also Sigford v. State*, 72 S.W.3d 679, 680-681 (Tex. App. Beaumont 2001, *pet.*

*ref.*) (Burgess, J., dissenting) and *Coleman v. State*, 955 S.W.2d 360, 364 (Tex. App. Amarillo 1997, *no pet.*) (Quinn, J., dissenting).

The fundamental nature of a void sentence further lies in the conclusion of law that a right of appeal is not required in order to afford due process. *United States v. MacCollom*, 426 U.S. 317, 323 (1976). This conclusion and the fact that an illegal sentence may be attacked at any time comports with the fundamentals of equal protection. Once a state establishes avenues of appellate review, those avenues must be kept free of unreasoned distinctions that serve to impede open and equal access to the appellate courts. *Rosales v. State*, 748 S.W.2d 451, 454 (Tex. Crim. App. 1987); *In re Beck*, 26 S.W.3d 553, 555 (Tex. App. Dallas 2000, orig. proceeding). "When an appeal is afforded...it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the equal protection clause." *Lindsey v. Normet*, 405 U.S. 56, 77 (1972). "Therefore, principles of due process and equal protection mandate that an appeal process established by statute must be fairly and equally accessible to all litigants." *Adsani v. Miller*, 139 F.3d 67, 77 (2nd Cir. 1998). What is available to Appellant in this case is also available to other defendants in their respective cases, so this Court is free to correct the illegal sentences.

Appellant is being held under void sentences and is entitled to have the validity of his sentences reviewed to have the error corrected without requiring

36

Appellant to pursue the issue by writ of habeas corpus. This is particularly true because such a challenge is permitted only "after final conviction in a felony case." Tex. Code Crim. Proc. Art. 11.07 § 3(b) (2015); *Ex parte Johnson*, 12 S.W.3d 472 (Tex. Crim. App. 2000) (If an applicant appeals his conviction and sentence, his conviction is not final for purposes of Article 11.07 until the court of appeals issues its mandate).

Further, "[T]he right of a State to lay down conditions it deems appropriate for criminal appeals, [does not sanction] differentiations by a State that have no relation to a rational policy of criminal appeal or [authorize] the imposition of conditions that offend the deepest presuppositions of our society." *Griffin v. Illinois*, 351 U.S. 12, 21-22 (1956) (Frankfurter, J., concurring). The State was entitled to place restrictions on appeals to try to "protect itself so that frivolous appeals are not subsidized and public moneys not needlessly spent." *Id*. at 24. But, the mechanism chosen must not provide only whimsical equality.

Appellant now addresses another related issue: Appellant recognizes that because he argues that § 12.42(a) was not shown to apply to the possession of marijuana case (Count One), the State might be inclined to agree with that claim with respect to the punishment applicable to the Count-Two offense and posit that Appellant was correctly subjected to a punishment of 25 years confinement under Texas Health & Safety Code § 481.113(d). Appellant, however, does not attack the

37

trial court's finding that the repeat offender allegation in Count Two was "true beyond a reasonable doubt." (RR2, 9). Nor can the State now change its election as to which punishment provision it sought to have applied to the conduct alleged in count two.

### iii. In the alternative, Appellant is entitled to withdraw his pleas of guilty because they were not intelligent or voluntary since Appellant was misinformed by the trial court about the benefits of the State's punishment recommendations or possible consequences of pleading not guilty.

In addition to his arguments about *Childress* and Texas Penal Code § 12.41(1), Appellant notes that his pleas to each offense charged against him were effectively rendered involuntary. The trial court did not correctly admonish him concerning the range of punishment for Count Two (assuming Count Two even alleged an offense). By overstating the possible punishment (as a *minimum* of 15 years up to 99 years or life), the trial court not only failed to comply with Texas Code of Criminal Procedure Article 26.13(a)(1), but the Court effectively deceived Appellant concerning the benefit of waiving his right to trial by jury or admitting certain facts. (CR, 80). "A criminal defendant who is induced to plead guilty in a state court in total ignorance of the precise nature of the charge and the range of punishment it carries has suffered a violation of procedural due process. Such a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Davison v. State*, 405 S.W.3d 682, 687

38

(Tex. Crim. App. 2013). Under the circumstances in this case, it is easily perceived that misinformation concerning the penalty for one charge would impact the defendant's decision to accept the government's offer or waive trial by jury as to the other charge as well. As observed in *Benavides*,

> "An admonishment which misstates the punishment range is worse than none at all. It is normally presumed that the defense attorney informed the defendant of the correct punishment range; that presumption is left undisturbed when the court gives no admonishment. But when the judge tells the defendant the wrong punishment range, and the defense attorney stands by silently, the defendant is affirmatively misled both by the court's statement and the attorney's silent acquiescence...
>
> [T]he prejudice from a judge's incorrect statement of the punishment range, ratified by the defense attorney's silence, is so likely to be prejudicial that "case by case inquiry is not worth the cost." . . , [I]ncorrect admonishments of the range of punishment deny due process of law under the Texas and U.S. Constitutions because they deprive the appellant of knowledge of the nature of the charges against him...
>
> Finally, how can we presume substantial compliance from an admonishment that is blatantly not in compliance with the governing law? How can we presume that a defendant was aware of the consequences of his plea and not misled when every authority in the criminal justice system, including the trial judge, the defense attorney, and the prosecutor, all gave him incorrect advice, and thus deprived him of correct information needed to make an informed choice of whether to waive his constitutional rights?"

*Benavides v. State*, 680 S.W.2d 899, 901, 902, 903 (Tex. App. Houston [1st Dist.] 1984, *pet. ref.*) (Cohen, J., dissenting); *see also Ex parte Smith*, 678 S.W.2d 78, 79-80 (Tex. Crim. App. 1984) (relief granted in case involving "a plea bargain based

upon the wrong range of punishment"). The State cannot claim any benefit under *Robinson v. State*, 739 S.W.2d 795, 801 (Tex. Crim. App. 1987) in this case because the punishment assessed was not within the applicable ranges.

Consistent with the requirements of the Fifth and Fourteenth Amendments, a guilty plea is valid only if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970) and *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). If a plea is entered after a defendant is made fully aware of the direct consequences of the plea, it is considered *voluntary*. *State v. Jiminez*, 987 S.W.2d 886, 888 (Tex. Crim. App. 1999). But if the plea is involuntary, it must be set aside. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969); *Williams v. State*, 522 S.W.2d 483, 485 (Tex. Crim. App. 1975).

The Court of Criminal Appeals has ruled that under Texas Rule of Appellate Procedure 25.2(a)(2), the involuntary character of a guilty plea is not properly reviewed in a plea-bargain case. Yet, it makes no sense for an appeals court to affirm a conviction that is void; and in fact, a court of appeals may not do so. Thus, for the reasons already stated above, the Court should address this issue as well (if necessary) in the event that relief is not granted on another basis.

### iv. Conclusion

Appellant is entitled to have the plea bargain set aside because the parties agreed to – and the trial court imposed – sentences that were illegal under applicable law, so this Court should correct the illegal sentences and remand this case back to the trial court for resentencing under the correct range of punishment. In the alternative, Appellant is entitled to withdraw his pleas of guilty because they were not intelligent or voluntary since Appellant was misinformed by the trial court about the benefits of the State's punishment recommendations or possible consequences of pleading not guilty. As a result, Appellant asks this Court to reverse the Judgment and sentence and remand this case back to the trial court for a new trial.

3. **Issue Three: The trial court erred in denying the motion to suppress the fruits from the search of Appellant's vehicle because the evidence showed that before developing probable cause that the vehicle contained hidden contraband, the police officer effectively seized the vehicle without benefit of a search warrant and without probable cause, but rather based solely on Appellant's arrival at the home of Angela Langston and at the request of Tiffany Deaton, which based on the officer's understanding of text messages sent by Deaton about bringing "green" to the home, the officer assumed was for the purpose of delivering marijuana.**

   i. **No exception to the warrant requirement was shown**

In a pretrial motion to suppress, Appellant argued that the evidence against him should be excluded under the Fourth Amendment and Texas Code of Criminal Procedure 38.23(a). (CR, 40-42); *see* U.S. Const. Amend. IV and Tex. Code Crim. Proc. Art. 38.23(b) (2010). Appellant urged that the search of his vehicle was unreasonable because it was conducted without a warrant. (CR, 41). The burden thus fell upon the State to demonstrate a valid exception to the warrant clause of the Fourth Amendment could be employed to nevertheless render the search reasonable. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Reeder v. State*, 428 S.W.3d 924, 927 (Tex. App. Texarkana 2014, *pet. granted*) ("A warrantless search or seizure is per se unreasonable, unless it falls under a recognized exception to the warrant requirement."); *see also Riley v. California,* 134 S.Ct. 2473, 2482 (2014). An exception was not shown in this case.

The State filed no legal memorandum or brief in response to the Appellant's motion. And the trial court ruled that the evidence was admissible without even

requiring the State's attorney to explain the prosecution's theory of admissibility. (RR1, 114, 119). And, despite Appellant's request, the trial judge failed to define his legal rationale for his ruling, instead stating only that "[T]hat law enforcement officers had probable cause to search the vehicle, that no search warrant was required to search the vehicle and the search by law enforcement officers of (Appellant's) vehicle was lawful." (CR-Supp, 5).

On July 1, 2015, through proposed findings of fact and conclusions of law, the State presented an argument concerning admissibility of the evidence. (CR, 105-111). However, after writing in its proposed findings that the evidence was seized from Appellant's vehicle, the State argues in its proposed conclusions of law that "[A]s a visitor with no expectation of privacy in the house, the Defendant had no standing to contest the search of the same." (CR, 108). Then the State claims that Appellant was not "under arrest" merely because he had on handcuffs (which is a strange argument especially because in support, the State cited *State v. Sheppard*, 271 S.W.3d 281 (Tex. Crim. App. 2008), a case in which the defendant was handcuffed because he threatened another a knife).

But in any event, assuming that Appellant was not "under arrest" when he was handcuffed, in support of the warrantless, nonconsensual search of Appellant's vehicle, the State cites *Guzman v. State*, 959 S.W.2d 631, 634 (Tex. Crim. App. 1998) even though in *Guzman*, the defendant gave consent for the search; *United*

*States v. Johns*, 469 U.S. 478, 484 (1985), even though in *Johns*, the warrantless search took place *after* the defendants were arrested and the packages that were in plain view. In fact, in *Johns*, Justice O'Connor made clear that the issue of the government's contention that the plain odor of marihuana emanating from the packages made a warrant unnecessary was not before the Court. *Id*. at 481. The actual issue before the court was whether a warrantless search of the packages found in plain view three days after they were removed from the vehicles was warranted. *Id*.

Thus, no exception to the warrant requirement was shown in the case before this Court, but three ostensible ones will be discussed. *See Tollefson v. State*, 352 S.W.3d 816, 821 (Tex. App. San Antonio 2011, *pet. ref.*) (Examining each exception to the warrant requirement as argued for by the State to determine whether they applied). This Court reviews de novo the determination of whether a specific search or seizure was "reasonable" as an ultimate question of Fourth Amendment law. *Kothe v. State*, 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004).

### ii. The lawful seizure, "plain smell" option does not apply

Appellant had just parked his vehicle nearby before entering the home. Unbeknownst to Appellant, officers were hiding in the residence who were intent on forcibly detaining Appellant. Once Appellant was restrained inside the residence, Appellant's vehicle was also seized by the police without a warrant.

Although he expressly objected to any search of his vehicle, Appellant could not physically do anything to prevent the search.

Seizure occurs when a person's possessory interests in property are interfered with. *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992). Automobiles are "effects" (U.S. Constitution Amend. IV) and "possessions" (Tex. Const., Article 1, § 9) in which the people have a right to be secure against unreasonable searches and seizures. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979) and *Odenthal v. State*, 290 S.W. 743, 749 (1927) (op. on rehearing).

The officer approached the vehicle to search it, and stated that he smelled a strong odor of marijuana emanating from the vehicle before commencing the search. He proceeded to search the vehicle and particularly a backpack located in the passenger compartment that was found to contain marijuana.

This Court has held that when an officer smells the distinctive odor of green marijuana coming from a nearby vehicle that this alone creates sufficient probable cause to believe that marijuana is concealed in the vehicle. *See Hernandez v. State*, 867 S.W.2d 900, 907 (Tex. App. Texarkana 1993, *no pet.*) and *Harris v. State*, No. 06-14-00162-CR, 2015 Tex. App. LEXIS 8046 (Tex. App. Texarkana, July 31, 2015, *no pet.*) (not yet reported). But, because the police gained access to Appellant's vehicle by: (1) using a false pretense, namely, an orchestrated entreaty by Appellant's acquaintance to come to the residence and bring *her* some

45

marijuana, and (2) interfered with Appellant's right to control his property, the officer had no legal right to treat the vehicle as being lawfully stopped by him, and the resulting discovery of the odor of marijuana was not inadvertent in any sense. *See White v. State*, 729 S.W.2d 737, 742 (Tex. Crim. App. 1987) ("Evidence that an officer purposefully seeks out is not in 'plain view.'"). The idea that a "plain smell" or an officer's use of his sense of smell does not constitute a search and thus is freed from any probable cause requirement is akin to the "plain view" doctrine. *See, e.g., State v. Morrow,* 128 625 P.2d 898, 902 (1981). Thus, the officer must have a lawful right of access to object to be smelled. *State v. Millan*, 916 P.2d 1114, 1118 n.4 (Ariz. App. 1995). *See also Piercy v. Commonwealth*, 303 S.W.3d 492, 498 (Ky. App. 2010); *State v. Lee*, 957 So.2d 76, 79-80 (Fla. 5th Dist. App. 2007) ("an officer may use his sense of smell from a place where he may lawfully be to develop probable cause").

Appellant's vehicle had become both stationary where the police wanted it (and probably loaded with marijuana) only by virtue of the conduct of the police. Appellant's conduct was induced by the police, who had a person acting in accordance with their instructions, use persuasion or other means likely to cause Appellant to drive to the home. As discovered during the hearing on Appellant's motion to suppress, on April 23, 2010, Foreman was focused on the home because Amis told him that he had received information that Appellant was frequenting the

46

residence "supposedly in possession of marijuana, ecstasy." (RR1, 13-14). This information was false because Angela Langston admitted that she knew nothing about Appellant selling drugs and had never seen Appellant at the home. (RR1, 75, 76).

This is not a valid means of securing the ability to gain control over a citizen's private property. *See* Tex. Pen. Code § 8.06 (2010) (entrapment is unreasonable means for officer to use in fighting crime). The proposed delivery and concomitant possession of marijuana in this case originated in the mind of the officer based on false information, and was at his request. There is every reason to believe that Appellant travelled to the officer's location with marijuana, at least at the time he did, only because he was enticed by the officer, posing as Tiffany Deaton.

The officer, having illegally seized the vehicle, could not exercise control over it for the purpose of a search. *See Williams v. State*, 743 S.W.3d 642, 645 (Tex. Crim. App. 1988) (referring to "probable cause needed to invoke the plain view doctrine"). In this case there was clearly a causal connection between the seizure of the vehicle, which was unlawful, and the search of the vehicle. *Cf. State v. Powell*, 306 S.W.3d 761, 770 (Tex. Crim. App. 2010).

The warrantless seizures of both Appellant's person and his vehicle were merely parts of a fishing expedition by Officer Foreman, who hoped something

47

would turn up as result. "Such a fishing expedition is precisely the sort of overreaching police behavior that the exclusionary rule is intended to deter." *See, e.g.*, *State v. Grayson*, 336 S.W.3d 138, 148 (Mo. 2011) and *State v. Bailey*, 338 P.3d 702, 714 (Or. 2014) (explaining that evidence must be excluded where the police detain a defendant "'for investigation' or for 'questioning'"). *See also Armstrong v. State*, 550 S.W.2d 25, 31 (Tex. Crim. App. 1976) (op. on rehearing) (The lack of reliability of the information the officer received meant "[t]he detention here was just the sort of fishing expedition the Fourth Amendment and Article 1, § 9 of the State Constitution, were designed to prohibit.").

The situation here is similar to an inventory search of an unlawfully impounded vehicle. What begins as an unreasonable seizure cannot lead to a reasonable search. For an impoundment of a vehicle to be lawful, it must be reasonable under the Fourth Amendment. *Benavides v. State*, 600 S.W.2d 809, 811 (Tex. Crim. App. [Panel Op.] 1980); *Roberts v. State*, 444 S.W.3d 770, 774 (Tex. App. Fort Worth 2014, *pet. ref.*). A subsequent inventory search is proper only when the vehicle's impoundment is proper. *Benavides*, 600 S.W.2d at 810; *Roberts*, 444 S.W.3d at 774. In effect, the officer in this case used an unreasonable means to be able to get where he was (next to Appellant's vehicle) in order to sense an odor of marijuana. There is "no authority that allows the State to search property merely because its officers have probable cause to believe that a crime

48

occurred and evidence of that crime can be found on the property to be searched." *State v. Granville*, 373 S.W.3d 218, 222 (Tex. App. Amarillo 2012), *aff'd*, 423 S.W.3d 402 (Tex. Crim. App. 2014). "A search, even of an automobile, is a substantial invasion of privacy." *United States v. Ortiz*, 422 U.S. 891, 896 (1975).

A second analogy is presented by *Baldwin v. State*, 278 S.W.3d 367 (Tex. Crim. App. 2009). In *Baldwin*, a deputy grew fearful of a person, handcuffed him, and then reached in the person's pocket to retrieve his identification from a wallet. *Id*. at 370. The Court of Criminal Appeals held that because the officer did not have a legal basis to detain the defendant, the deputy also had no legal basis (probable cause) "to search for non-weapon contraband or other evidence." Id. at 370-372. "[T]he officer's conduct of reaching into appellant's pocket—even under a valid investigative detention—was an illegal search unless there existed some exception to the usual probable cause requirement." *Id.* at 372. *See also Sibron v. New York*, 392 U.S. 40, 62 (1968) (inferences drawn from observations to support a search must be reasonable).

### iii. Automobile exception does not apply

The State may rely upon the so-called "automobile exception" to justify the trial court's order denying the motion to suppress. Under the automobile exception, the police may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains contraband. *California v. Carney*,

471 U.S. 386, 393 (1985); *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). This exception is predicated upon the following: (1) the "ready mobility" of a vehicle that creates "an exigency..."; *Labron*, 518 U.S. at 940; *Carney*, 471 U.S. at 390-391; *see also Carroll v. United States*, 267 U.S. 132, 153 (1925); and (2) an individual has a reduced expectation of privacy in a vehicle because it is subject to "pervasive [government] regulation." *Carney*, 471 U.S. at 391-392); *see also Franklin v. State*, 976 S.W.2d 780, 781 (Tex. App. Houston [1st Dist.] 1998, *pet. ref.*), citing *Wilson v. State*, 621 S.W.2d 799, 803-804 (Tex. Crim. App. 1981). This exception to the warrant requirement applies when the vehicle "is found stationary in a place not regularly used for residential purposes" and is readily capable of being used on the highways. *Martin v. State*, 780 S.W.2d 497, 500 (Tex. App. Corpus Christi 1989, *pet. ref.*); see *Carney*, 471 U.S. at 392-393.

In the case before this Court, the vehicle was not "found" stationary. Rather, it was made stationary by official conduct. Nor was there evidence that the vehicle was not parked in a place regularly used for residential purposes.

Further, the automobile exception originally relied on an inference of exigency based on the easy mobility of a vehicle. *Cardwell v. Lewis*, 417 U.S. 583, 598 (1974) (Stewart, J., dissenting, joined by Douglas, Brennan, and Marshall, JJ.) ("Where there is no reasonable likelihood that the automobile would or could be moved, the *Carroll* doctrine is simply inapplicable."). "While the nature and

normal use of an automobile will often be the key factor in providing the 'exigent circumstances' in situations where otherwise they would not exist, nevertheless the fact that the place to be searched is a car is but one factor, an important one, in making the determination as to the existence of the 'exigent circumstances.' It is not the only factor to be considered." *Stoddard v. State*, 475 S.W.2d 744, 752 (Tex. Crim. App. 1972). Under similar facts, this exception to the warrant requirement was also rejected in *Pettigrew v. State*, 908 S.W.2d 563, 569 (Tex. App. Fort Worth 1995, *pet. ref.*).

Appellant recognizes that the Court of Criminal Appeals determined that probable cause is all that is required to make the search of an automobile legal, and that the automobile exception does not require exigency. *State v. Guzman*, 959 S.W.2d 631, 633-634 (Tex. Crim. App. 1998) ("[A] vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search."). However, in *Guzman*, the police had reliable information leading them to believe that contraband would be found in the vehicle, and in fact, obtained the driver's *consent* to search the vehicle. *Id*. at 632. Thus, the vehicle in Guzman was lawfully in police custody. The same result occurred in *United States v. Johns*, 469 U.S. at 484, where the Court stated that "[a] vehicle *lawfully in police custody* may be searched on the basis of probable cause to believe that it

contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search." (emphasis supplied).

In the case before this Court, however, the police gained access to Appellant's vehicle by: (1) using a false pretense, namely, an orchestrated entreaty by Appellant's acquaintance to come to the residence and bring *her* some marijuana, and (2) interfered with Appellant's right to control his property, the officer had no legal right to treat the vehicle as being lawfully stopped by him, and the resulting discovery of the odor of marijuana was not inadvertent in any sense. And, the information Amis provided to Foreman was false because Angela Langston admitted that she knew nothing about Appellant selling drugs and had never seen Appellant at the home. (RR1, 75, 76).

But, just like the nonsensical warrant-clause exceptions in *New York v. Belton*, 453 U.S. 454 (1981) and *Schmerber v. California*, 384 U.S. 757 (1966) were ultimately struck down or retreated from, Appellant is confident that the true meaning of *Carroll* will soon be restored as a liberty interest for our citizens. That is assuredly the direction evident in *Arizona v. Gant*, 556 U.S. 332 (2009), *Missouri v. McNeely*, 133 S.Ct. 1552 (2013), and *United States v. Jones*, 132 S.Ct. 945 (2012). It makes no sense to conclude that the warrantless search of an automobile is presumed to be unreasonable, only to hold that officers may search a vehicle whenever "they have probable cause to believe that the vehicle contains

evidence of a crime." *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008).

Where the inherent mobility of a vehicle and any threat of evidence destruction has been overcome, the ability to obtain a warrant is even less burdensome than in drunk driving cases, so the intervention of a magistrate is therefore called for. Additionally, "technological or logistical advances that are designed to streamline the process through which a warrant may be obtained are other factors to consider when examining the totality of the circumstances to determine whether those circumstances were exigent such that the warrant requirement may be dispensed with in a given situation." *Sutherland v. State*, 436 S.W.3d 28, 37 (Tex. App. Amarillo 2014, *reh. overruled*). It is clear that the automobile must be lawfully in the custody of the police before it may be searched on the basis of probable cause. *Johns*, 469 U.S. at 484. For this reason alone, the search of Appellant's vehicle was unreasonable and illegal under the Fourth Amendment.

When the automobile exception applies, a law enforcement officer may conduct a warrantless search of a motor vehicle if he 'has probable cause to believe the vehicle contains evidence of a crime." *Powell v. State*, 898 S.W.2d 821, 827 (Tex. Crim. App. 1994); *Carney*, 471 U.S. at 390-391. "Police officers have the right to search an entire vehicle when they have probable cause to believe there is contraband in the vehicle but do not know where it is located." *United States v. Ross*, 456 U.S. 798, 825 (1982); *Herring v. State*, 758 S.W.2d 849, 853 (Tex. App.

Corpus Christi 1988, *pet. ref.*); *Harper v. State*, 704 S.W.2d 546, 548 (Tex. App.
Houston [14th Dist.] 1986, *pet. ref.*).

But, the factual basis for probable cause to search must be legally obtained.
*See State v. Cuong Phu Le*, 463 S.W.3d 872 (Tex. Crim. App. 2015), citing *Brown v. State*, 605 S.W.2d 572, 577 (Tex. Crim. App. 1980). Although *Cuong Phu Le* deals with legally obtaining a factual basis for probable cause for a search warrant, the same principle applies to any search. Probable cause for a search may come from any of the following sources: (1) personal observations of officers, *Labron*, 518 U.S. at 940; (2) the experience, special training, and expertise of officers to draw limited inferences of criminal activity from behavior that is not facially criminal, *Texas v. Brown*, 460 U.S. 730, 742-743 (1983) and *Florida v. Royer*, 460 U.S. 491, 507 (1983); (3) information from a reliable, known informant or information from an independent source that can be independently corroborated, *Draper v. United States*, 358 U.S. 307, 313 (1959), *Illinois v. Gates*, 462 U.S. 213, 238 (1983); (4) weapons or other evidence seized during stops based upon reasonable suspicion, *United States v. Sharpe*, 470 U.S. 675, 683 (1985), *Adams v. Williams*, 407 U.S. 143, 148-149 (1972); (5) evidence discovered in plain view, *Horton v. California*, 496 U.S. 128, 142 (1990); (6) evidence discovered during consensual searches and or interviews, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); and (7) association with a person that the police

have probable cause to arrest may establish probable cause to arrest the associate if the associate is present in a place in which criminal activity is openly and repeatedly conducted, as was the case in *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (As opposed to "a person's mere propinquity (proximity) to others independently suspected of criminal activity.").

All of these sources for probable cause are legally obtained, as opposed to what occurred in the case before this Court. Moreover, the Supreme Court has explained at length that an arrest alone does not justify the search of the arrestee's automobile, particularly when the police does not have lawful access to it (such as impounding the vehicle or consent to search). *Coolidge v. New Hampshire*, 403 U.S. 443, 473-484 (1971). "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." *Carroll*, 267 U.S. at 158-159. The part II-D majority in *Coolidge* carefully observed, but rejected, the idea that it might more easily be considered reasonable for the police to seize a vehicle "where there was no stopping and the vehicle was unoccupied," since the intrusion would be "less substantial." *Coolidge*, 403 U.S. at 479. The Supreme Court did not interpret *Carroll* to apply because "[U]sing reasoning of this sort, it is but a short step to the position that it is never

55

necessary for the police to obtain a warrant before...seizing an automobile, provided that they have probable cause." *Id.*

To determine whether probable cause existed to believe evidence of a crime would be found in a certain place, courts apply the "totality of the circumstances" test. *See State v. Carter*, 915 S.W.2d 501, 503 (Tex. Crim. App. 1996) and *Neese v. State*, 930 S.W.2d 792, 800 (Tex. App. Beaumont 1996, *pet. ref.*). This test considers whether in light of "all the facts and circumstances including the veracity and basis of knowledge of persons supplying hearsay information, a fair probability exists that contraband or evidence of a crime will be found in a particular location." *Rodriguez v. State*, 838 S.W.2d 780, 782 (Tex. App. Corpus Christi 1992, *no pet.*).

Here, based on a false tip, the police suspected that Appellant was dealing marijuana and using the home of Angela Langston as a storage or preparation site. This appeared to have been corroborated by alleged statements of Tiffany Deaton that Appellant visited the home the day before with marijuana, that he had previously supplied marijuana to her, and the discovery of tape, which smelled of marijuana, and which the officer took to indicate the tape had been removed from larger packages of marijuana. The veracity of what Deaton said needed to be tested or understood before the officer could rely on her representations. This is because probable cause exists when facts and circumstances within the officer's

knowledge or about which he has *reasonably trustworthy* information are sufficient to warrant a person of reasonable caution to believe that an offense was or is being committed. *See Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005).

Foreman's only basis for reliance, however, was Deaton's claimed knowledge of Appellant, which was impelled by the officer's threats against her and promises of benefits if she would assist in the investigation. (RR1, 45-46, 87, 89-90, 103-04, 106-07). Appellant's arrival at the scene in a green Toyota created no greater reason to believe the vehicle was subject to a reasonable search. Therefore, the result of the "plain smell" by Foreman must be disregarded in judging the reasonableness of the vehicle search.

### iv. Search incident to an arrest exception does not apply

There was on probable cause for the police to seize Appellant. As the vehicle arrived at Langston's house, at most, Foreman could only speculate whether it contained marijuana. While Foreman may have had a hunch that it contained marijuana, Appellant had not said or done anything in Foreman's presence that intimated that Foreman's hunch was valid. Appellant's mere arrival at the requested place in a particular automobile may have proved he had received Deaton's message, but not that he was able or willing to comply with it by

transporting marijuana. Thus, Foreman illegally seized Appellant because Foreman should have done more to confirm his suspicion.

In certain circumstances, a valid warrantless search may be made incident to an arrest, but the arrest must be lawful and arrests on less than probable cause or outside the authority granted in Code of Criminal Procedure Chapter 14 are not lawful. "A police officer may arrest an individual without a warrant only if (1) there is probable cause with respect to that individual and (2) the arrest falls within one of the statutory exceptions." *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

The only exception possibly suggested by the facts here is that in Code of Criminal Procedure Article 14.03(a)(1), because Appellant was found in a "suspicious place and under circumstances which reasonably showed that he had been guilty of some felony," a limited search may have been allowed. Tex. Code Crim. Proc. Art. 14.03(a)(1) (2010). However, a search incident to arrest under this article is limited in scope. "Once there is probable cause for an arrest, the officers can search appellant's person and the area 'within his immediate control.'" *Chimel v. California*, 395 U.S. 752, 763 (1969); *Carrasco v. State*, 712 S.W.2d 120, 123 (Tex. Crim. App. 1986); *see also Flores v. State*, 895 S.W.2d 435, 444-445 (Tex. App. San Antonio 1995, *no writ*). This exception to the warrant requirement did

58

not authorize the search of the vehicle after Appellant had moved many feet away from it and to the inside of a home.

### v. Conclusion

The trial court erred in denying the motion to suppress the fruits from the search of Appellant's vehicle because the evidence showed that before developing probable cause that the vehicle contained hidden contraband, the police officer effectively seized the vehicle without benefit of a search warrant and without probable cause, but rather based solely on Appellant's arrival at the home of Angela Langston and at the request of Tiffany Deaton, which based on the officer's understanding of text messages sent by Deaton about bringing "green" to the home, the officer assumed was for the purpose of delivering marijuana. As a result, Appellant asks this Court to reverse the Judgment and sentence and remand this case back to the trial court for a new trial.

4. **Issue Four: The trial court erred in accepting Appellant's guilty plea without first ruling that the recording of Appellant's statement at the Paris Police Department was inadmissible because it: (1) did not reflect that during the recording, Appellant was given the warning in Texas Code of Criminal Procedure Article 38.22 § 2, which is required under Article 38.22 § 3(a)(2), and (2) was illegally obtained as a result of the arrest of Appellant, which was unlawful because the arrest was based on the fruits of the illegal search of Appellant's vehicle.**

Appellant's statements to Foreman at the city jail were apparently recorded and were incriminating, yet it appears the State ultimately agreed the recording could not be used as evidence against Appellant. The trial court implicitly agreed with this concession in accepting Appellant's plea, which was conditioned on the State's concession.

But, although the trial court never made an explicit ruling on this issue, the trial court's failure to conduct a hearing and announce a ruling should be considered by this Court as an adverse decision in connection with Appellant's decision to accept the plea bargain offered by the State. The issue was ripe for decision because Appellant had argued that his arrest was based on the fruits of an illegal search and that Foreman had failed to "scrupulously honor" Appellant's earlier invocation of his rights to counsel and to terminate his interview with Springer. *Cf. Michigan v. Mosley*, 423 U.S. 96, 104 (1975) ("the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was

60

'scrupulously honored.'"); *see also Edwards v. Arizona*, 451 U.S. 477, 485 (1981) (where an accused has invoked his rights under *Miranda* he cannot be subjected to further interrogation by the authorities "unless the accused himself initiates further communication, exchanges, or conversations with the police").

But-for the decision that Appellant's arrest was *not* tainted by reliance on the fruits of an *illegal* search, the trial court presumably would have recognized that statements made by someone not legally in custody cannot be used as evidence against him. *See Vicioso v. State*, 54 S.W.3d 104, 110 (Tex. App. Waco 2001, *pet. ref.*) ("A 'voluntary' confession given after an illegal arrest is tainted, and, as 'a direct result of' the arrest, must be excluded under article 38.23(a) of the Code of Criminal Procedure."); *see also State v. Iduarte*, 268 S.W.3d 544, 550 (Tex. Crim. App. 2008) ("We have long held that the 'fruit of the poisonous tree' doctrine...serves to exclude as evidence not only the direct products of Fourth Amendment violations, but also the indirect products."). Appellant was entitled to have the admissibility of his statements (or the validity of the State's threat to use them) tentatively decided by the court before trial and the Court erred in not clarifying its decision before forcing Appellant's decision as to which plea to enter and whether to waive his right to a jury trial.

The implicit ruling by the trial court that the recorded statements could be used as evidence against Appellant (if the opposite inference is not drawn from the

court's accepting Appellant's conditional plea of guilty) was wrong, not only under such cases as *Vicioso*, but for two other reasons. If this Court decides to remand this case for trial, then it should provide the necessary guidance on the issue so that error does not creep back into the case. The State may otherwise decide to withdraw its concession.

The evidence indicated that Foreman is the one who initiated additional discussion about what Appellant had been doing. While the State may have believed that the discussion incidentally arose during a book-in procedure, it was clear that Foreman is the one who broached the topic of getting more information from Appellant. (RR1, 30-31). Appellant did not initiate the discussion or express a change of mind about incriminating himself. Rather, he apparently responded to Foreman's kindly (but nudging or fishing) instruction that "if you want to talk to me, if you change your mind, you have to initiate that." (RR1, 33). This was not a means of honoring the earlier choice made by Appellant, but a subtle method of encouraging a change in that choice.

Appellant's "book-in" statement was also, and perhaps more clearly, inadmissible because it did not comply with Texas law. The recording did not contain administration of the *statutory* custodial interrogation warning. When the requirements of article 38.22 "are not met [it] does not mean that the statement was necessarily obtained as a result of any legal or constitutional violation [because]

art. 38.22 mandates exclusion by its own terms and without reference to art. 38.23. Article 38.22 is a procedural evidentiary rule, independent of the statutory exclusionary rule set out in Article 38.23." *Nguyen v. State*, 292 S.W.3d 671, 677 (Tex. Crim. App. 2009). This was a case "where the legislature has withheld a trial court's discretion to admit evidence unless certain statutory requirements are met." *Carroll v. State*, No. 02-11-00265-CR (Tex. App. Fort Worth June 6, 2013, no pet.) (mem. op., not designated for publication). Article 38.22 § 3 (a) of the Code of Criminal Procedure requires more than *Miranda*. It plainly states:

> No oral . . . statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless: (1) *an* electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement; (2) prior to the statement *but during the recording* the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning; . . . ." (emphasis added)

In subsection (e) of Article 38.23, it provides as follows: "The courts of this state shall strictly construe Subsection (a) of this section and may not interpret Subsection (a) as making admissible a statement unless all requirements of the subsection have been satisfied by the state..."

Further, in *State v. Cruz*, 461 S.W.3d 531 (Tex. Crim. App. 2014), the Court of Criminal Appeals ruled that the types of questions Foreman asked Appellant are not acceptable book-in questions. The Fifth Amendment and Article 1, § 10 of the Texas Constitution protect every person from compelled self-incrimination. U.S.

Const. Amend. V; Tex. Const. Art. 1, § 10; *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (Certain warnings must be given before a statement made during custodial interrogation could be admitted into evidence); *Dickerson v. United States*, 530 U.S. 428, 432 (2000) (Miranda and its progeny govern the admissibility of statements made during custodial interrogation in both state and federal courts). This means that a person may not be forced to provide any form of testimonial response to a police officer's questions. A "testimonial response" means any form of mental acuity that reflects a person's communication of thoughts to another, including but not limited to a verbal response. *See Pennsylvania v. Muniz*, 496 U.S. 582, 592-595 (1990) (Nonverbal conduct contains testimonial component whenever the conduct reflects a person's communication of thoughts to another).

For *Miranda* and consequently Article 38.22 to apply, the testimonial communications by a defendant must be "compelled" by the actions of state officials or agents. *See McKune v. Lile*, 536 U.S. 24, 29-30 (2002) (Fifth Amendment not implicated and does not protect Kansas prison inmates in a Sexual Abuse Treatment Program who were required to complete and sign an "Admission of Responsibility" form in which they accepted responsibility for crimes and were required to provide a sexual history detailing all prior sexual activity, regardless of whether they were charged or uncharged criminal offenses, and regardless of whether the information might be used against inmates in future criminal

64

proceedings). In other words, a defendant is "compelled" in this sense if he truly has no choice due to minimum "psychological intimidation." *Alford v. State*, 358 S.W.3d at 654; *Innis*, 446 U.S. at 300.

To be certain that a person is aware of the right to be free from self-incrimination and to avoid the attendant "psychological intimidation," the person must be advised of the right to remain silent, the right to the presence of an attorney, that an attorney will be appointed before questioning if the accused cannot afford one, and that anything said can be used against him or her in a court of law. *Miranda*, 384 U.S. at 444; *Dickerson v. United States*, 530 U.S. at 432-434. If a person is not given these warnings before questioning is begun or if an attempt to exercise one or more of the rights is not honored, irrespective of whether the "statement" constitutes a confession, an admission, or an exculpatory statement, the State cannot admit into evidence any statement obtained as a result of the interrogation. *Miranda*, 384 U.S. at 476-479. Further, the failure to administer *Miranda* warnings creates a presumption of compulsion, and "un-Mirandized" statements made must be excluded from evidence. *Oregon v. Elstad*, 470 U.S. 298, 314 (1985).

As stated above, *Miranda* is codified under Texas Code of Criminal Procedure Article 38.22. *See* Tex. Code Crim. Proc. Art. 38.22 (2010). *Miranda* applies only when a person is subjected to "custodial interrogation." *Melton v.*

*State*, 790 S.W.2d 322, 326 (Tex. Crim. App. 1990). In Texas, "custodial interrogation" is defined the same as it is defined under federal law. *Bass v. State*, 723 S.W.2d 687, 690-691 (Tex. Crim. App. 1986); *Wicker v. State*, 740 S.W.2d 779, 785 (Tex. Crim. App. 1987), *cert. denied*, 485 U.S. 938 (1988); *Anderson v. State*, 787 S.W.2d 221, 227 (Tex. App. Fort Worth 1990). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444; *Escamilla v. State*, 143 S.W.3d 814, 823 (Tex. Crim. App. 2004); *Paez v. State*, 681 S.W.2d 34, 36-37 (1984) (*Miranda* and Article 38.22 apply only to law enforcement personnel or to state agents); *Oriji v. State*, 150 S.W.3d 833, 837 (Tex. App. Houston [1st Dist.] 2004) (private citizen becomes a state agent if she makes a "citizen's arrest," and Miranda warnings are required before the suspect may be asked questions). The nature or severity of the offense involved is not a factor in determining whether the interrogation is custodial or whether *Miranda* applies. *Berkemer v. McCarty*, 468 U.S. 420, 434 (1984).

To determine whether *Miranda* applies, two questions must be answered: first, is the defendant in custody, and second, has there been an interrogation. There is no question that a defendant is "in custody" when he or she has been detained under an arrest (with or without a warrant). *Scott v. State*, 571 S.W.2d

66

893, 896 (Tex. Crim. App. 1978). And a person may be in custody without being under formal arrest. *Melton v. State*, 790 S.W.2d at 325. A person is "in custody" if the person's freedom of movement has been restrained to the extent usually associated with a formal arrest. *Minnesota v. Murphy*, 465 U.S. 420, 430 (1984). This Court has employed factors to determine whether "custody" exists for the purposes of Miranda. *See Meek v. State*, 790 S.W.2d 618, 621 (Tex. Crim. App. 1990) (whether the defendant is the focus of the investigation, and whether a reasonable person would believe that his or her freedom was being deprived in a significant way; or (1) the subjective intent of the police, (2) the subjective belief of the defendant, (3) the existence of probable cause to arrest, and (4) the focus of the investigation). The two-factor approach seems favored by the Supreme Court of the United States, as in *Stansbury v. California*, 511 U.S. 318 (1994), the Court ruled that an officer's views concerning the nature of an interrogation or beliefs concerning the potential culpability of the defendant are relevant to *Miranda* only if the officer's views or beliefs were "manifested" to the defendant. *Id*. at 323-324; *see, e.g.*, *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) (For the purposes of *Miranda*, a person is not "in custody" even though the officer decided that as soon as the person stepped out of his vehicle, he would be stopped and charged with a traffic offense). In other words, *Miranda* does not attach under this situation until the officer objectively creates a custodial environment and has communicated to

67

the defendant that he is not free to go. *Id.*; *See also Abernathy v. State*, 963 S.W.2d 822, 825 (Tex. App. San Antonio 1998, *pet. ref.*) (The fact that the officer formed a subjective opinion that the defendant was intoxicated is not relevant to *Miranda* until the officer effected a "conveyance of this suspicion" to the defendant); *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996) (Factors used by this Court are whether the defendant arrived at the place of interrogation voluntarily, the length of the interrogation, whether the defendant's requests to see relatives and friends are refused, the degree of control exercised over defendant, and whether a "pivotal admission established custody").

In the case before this Court, there is no question that Appellant was in custody when Foreman began talking to him about the case, and there clearly was an interrogation. (RR1, 25-28). Foreman's explanation of these events are simply not believable: he claimed that he explained to Appellant that since he understood that Appellant had requested an attorney when Springer tried to question him, he could (Foreman) not speak with Appellant unless Appellant attempted to speak with him first. (RR1, 25-26). Foreman stated that in response, Appellant supposedly denied having requested an attorney when speaking with Springer and "started talking" to Foreman. (RR1, 26). So, Foreman was obviously lying under oath. Or, Springer lied to Foreman when he told Foreman that Appellant did not wish to speak to anybody. The proposition that Springer lied to Foreman is

68

absolutely absurd, as undersigned counsel cannot recall a single time in a case acted as counsel or read that one officer lies to another officer and says, "defendant does not wish to speak." In any event, after Foreman compelled Appellant to speak, Foreman described Appellant's statement as confessions to being a marijuana and ecstasy dealer to varying degrees. (RR1, 26, 64).

In an alternative world, perhaps it is possible that there was compliance, because Foreman supposedly reminded Appellant of the warning given earlier by Springer in connection with his attempt to interrogate Appellant. *See Flemming v. State*, 949 S.W.2d 876, 880 (Tex. App. Houston [14th Dist.] 1997, *no pet.*) (holding recording was admissible when first portion reflected full warnings, recording stopped, and recording resumed with accused acknowledging that warnings had been given); *Stinnett v. State*, 720 S.W.2d 663, 666 (Tex. App. Amarillo 1986, *no pet.*) ("The substantial compliance standard the trial court used to admit the entire recording properly focused on the time when the warnings were given to appellant, and not the time when the warnings were recorded."); *Franks v. State*, 712 S.W.2d 858, 861 (Tex. App. Houston [1st Dist.] 1986, *pet. ref.*) (holding recording was admissible when during recording accused acknowledged he had been advised of his rights during an earlier phase of *the* interrogation not included on the recording).

However, this case is not in an alternative world, and this argument fails because the warnings were not part of the same interrogation (or an earlier "phase"); nor were they contained on another part of a single recording. The fact that Appellant had terminated the earlier attempt by Springer to speak to him forecloses this argument. *Cf. Bible v. State*, 162 S.W.3d 234, 242 (Tex. Crim. App. 2005) (finding "the two sessions were part of a single interview for the purpose of Article 38.22").

### vi. Conclusion

The trial court erred in accepting Appellant's guilty plea without first ruling that the recording of Appellant's statement at the Paris Police Department was inadmissible because it: (1) did not reflect that during the recording, Appellant was given the warning in Texas Code of Criminal Procedure Article 38.22 § 2, which is required under Article 38.22 § 3(a)(2), and (2) was illegally obtained as a result of the arrest of Appellant, which was unlawful because the arrest was based on the fruits of the illegal search of Appellant's vehicle. As a result, Appellant asks this Court to reverse the Judgment and sentence and remand this case back to the trial court for a new trial.

## X. Conclusion and Prayer

For the above reasons, Appellant prays that upon appellate review, this Court reverse the Judgment and sentence and under Count Two, enter a judgment of acquittal as to that offense. In the alternative, Appellant prays that this Court remand Count Two to the trial court for a new trial with instructions that none of the evidence seized from Appellant or Appellant's statements to the police are admissible. Again in the alternative, Appellant prays that this Court remand Count Two to the trial court for reassessment of punishment.

As to Count One, Appellant prays that this Court reverse the Judgment and sentence and remand Count One to the trial court for a new trial with instructions that none of the evidence seized from Appellant or Appellant's statements to the police are admissible. In the alternative, Appellant prays that this Court remand Count One to the trial court for reassessment of punishment.

Respectfully submitted,

Michael Mowla
P.O. Box 868
Cedar Hill, TX 75106
Phone: 972-795-2401
Fax: 972-692-6636
michael@mowlalaw.com
Texas Bar No. 24048680
Attorney for Appellant

71

/s/ **Michael Mowla**
Michael Mowla

## XI.  Certificate of Service

I certify that on October 20, 2015, a true and correct copy of this document was served on Gary Young and Laurie Pollard of the Lamar County District Attorney's Office by email to gyoung@co.lamar.tx.us and lpollard@co.lamar.tx.us. *See* Tex. Rule App. Proc. 9.5 (2015).

/s/ **Michael Mowla**
Michael Mowla

## XII.  Certificate of Compliance with Tex. Rule App. Proc. 9.4

This certifies that this document complies with the type-volume limitations because it is computer-generated and does not exceed 15,000 words.  Using the word-count feature of Microsoft Word, the undersigned certifies that this document contains 12,886 words in the entire document *except* in the following sections: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point font.  *See* Tex. Rule App. Proc. 9.4 (2015).

/s/ **Michael Mowla**
Michael Mowla